N. Sheldon & Co. *v.* The Hartford Fire Insurance Co.

————•◄❰❱►•————

22  235
e183US324

## N. SHELDON & CO. *vs.* THE HARTFORD FIRE INSURANCE CO.

In a policy of insurance, reference was made to a *survey*, in these words : " *Reference is had to survey No.* 83, *on file in the office of the Protection Insurance Company.*" The survey consisted of answers, given by the insured, to questions proposed by the insurers. Some of the questions were intended to draw forth a minute description of the premises to be insured, and others, to enable the insurers to estimate the degree and extent of the risk. *Held,* that the reference in the policy, to the survey, was not merely for a fuller description and identification of the premises to be insured, than was contained in the body of the policy, but was a proper reference, for the purpose of incorporating *all* the survey, as much as any part of it, into the policy, and that all the answers, applicable to the subject matter, were obligatory on the insured.

Held, also, that the policy and the survey constituted the entire contract between the parties, and that, as there was no imperfection, or ambiguity in its language, evidence of parol representations, made prior to the issuing of the policy, could not be received, to explain and qualify the contract.

When one of the interrogatories was,—" Is there a watchman in the mill, during the night ?" to which the answer was,—There is a watchman nights," the court were inclined to consider the answer not as a warranty, but as a representation material to the risk, to be substantially kept and performed.

A party can not obtain redress, by motion in error, for a mistake of the jury in relation to a question which is properly before them.

This was an action on a policy of insurance, to recover the sum of 7,000 dollars, insured against loss by fire, on a woolen mill, stock and machinery, owned by the plaintiffs. The defendants pleaded the general issue, with notice of special matter, to be given in evidence. The cause was tried at Hartford, April term, 1853.

On the trial, the plaintiffs introduced in evidence the policy of insurance, on which the action was brought, the execution of the same being admitted by the defendants. It was also conceded, that the loss complained of, and for which a recovery was sought, had occurred, and exceeded, in amount, all the sums then insured, or purporting to be insured thereon, and that the fire which occasioned said loss, took place between three and four o'clock, on the morning of Sunday, the 8th of April, 1849, and while it was yet dark, and during the period covered by said policy. Reference was made, in said policy, to a survey, in these words : " Reference is had to survey No. 83, on file in the office of the Protection Insurance Company, Hartford." The defendants then introduced this survey in evidence, the caption of which was, " Survey of a cotton or woolen mill, on which insurance is to be predicated." The eighth interrogatory was as follows : " Is there a watchman in the mill during the night ? Is there a good watch-clock ? Is the mill left alone, at any time, after the watchman goes off duty in the morning, till he return to his charge at evening?" To these questions, the plaintiffs made the following answers opposite thereto. " There is a watchman, nights,—no clock. Bell is struck every hour, from 8 o'clock P. M., till it rings for work, in the morning." The answer to the last question was, " Only at meal times, on the Sabbath, and other days, when the mill does not run."

The ninth interrogatory was,—Is the dirty waste carefully removed from the mill, daily, and where is it placed ? Is batting made in the mill, and where ? The answer opposite the first of these questions, was,—" It is, and thrown into the river." The answer opposite the second, was,—" It is not."

The twenty-fourth interrogatory was,—"How long has the machinery been running, and is it in good repair? How many hands are there in the factory, and what proportion are men? Answer, "Not yet started; can not tell; probably there will be from seventy to one hundred." To the interrogatory, "What amount is there now insured on the property, in what offices, on whose account?" the answer was, " Property not insured at all."

At the bottom of the survey, was the following letter.

"Insurance Company, Hartford.

"Your application for insurance is received. Please give full and explicit answers to the interrogatories annexed, and fill the appropriate blanks in the above table, for valuation of buildings and machinery, on receipt of which, we will promptly advise you of the rate, at which this company will grant a policy thereon."

It was proved, that said survey was made, on or about the 8th day of September, 1848, and that Plunkett & Hurlburt, by whom said policy was countersigned, and who resided at Pittsfield, in the state of Massachusetts, were, at the date of said policy, and for a long time before and after, not only the agents of the defendants, for making insurances, but were agents for the like purpose, of the Ætna and Protection Insurance Companies, respectively, of Hartford aforesaid. Two policies, bearing date the 11th day of September, 1848, each for the sum of $12,500, for the period of one year, commencing on said 11th day of September, 1848, at 12 o'clock, noon, and countersigned by said Plunkett & Hurlburt, as agents, were issued, one by said Ætna, and the other by said Protection Company, and upon the same premises, in the application connected with said survey, requested to be insured, and covering in part, the same premises or a part thereof, purporting to be covered by the said policy of the defendants, and so far, in case of loss, made payable to the plaintiffs; both of which said policies were outstanding

at the time of the date of said policy of the defendants. and
of each of which said policies, said survey was made a part,
and the statements therein contained were warranties.   It
was also proved, that, at the date of the defendants' policy,
said factory was, and for nearly six months then next pre-
ceding, had been, in operation, with a large number of labor-
ers and operatives therein employed; also that said factory
building of the defendants, had been recently erected upon
the site of another, which had shortly before been destroyed
by fire.   It was also conceded, that the plaintiffs were not
accustomed to, and never had been in the habit of, keeping
a watchman in or at their said mill, after 12 o'clock on Sat-
urday night, until 12 o'clock of the Sunday night then next
following, but they were in the habit of keeping a watch-
man there, on all other nights, through the entire night.
Their watchman, on the night of the fire by which said loss
was occasioned, the same being Saturday night, left said
mill and premises, a few minutes after 12 o'clock, and before
said fire, and said fire occurred in the absence of any watch-
man.

The defendants claimed, that said policy was based upon
said survey, and that the answers to the interrogatories
therein contained, numbered eight and nine, were represent-
ations material to the risk.

The plaintiffs claimed, that the reference to said survey,
in said policy, was only for the purpose of describing and
identifying the buildings containing the property insured,
and not for any other purpose, nor with a view to adopt the
answers and statements therein contained, or any of them,
as part or parts of the contract between the parties, or as
representations, upon which said policy of the defendants
was based; that said policy was based upon the personal
examination of Plunkett, one of said agents, and such infor-
mation as was given to him, at the time such examination
was made, which was the day but one next before the date
of said policy, and made with a view to the issuing thereof,

N. Sheldon & Co. *v.* The Hartford Fire Insurance Co.

by one John S. Fenn, the superintendent of said manufacturing establishment, and the agent of the plaintiffs, and fully authorized by them to give any, and all such information, touching said risk, as might be required, or proper for the purpose of said insurance; that said Fenn did inform said Plunkett at the time of said examination, what were the usage and custom, as to keeping a watchman in or at said mill, and that the plaintiffs were not accustomed to, or in the habit of, keeping a watchman in or at said mill, or establishment, at any time between 12 o'clock on Saturday night and 12 o'clock on the Sunday night next following, and that said agents well knew before, and at the time of, the date and issuing of said policy, that no watchman was kept in or at said mill, during said time; and the plaintiffs offered said Fenn as a witness, to prove the facts aforesaid.

The defendants objected to the admission of said testimony, upon the ground, that the whole contract between the parties consisted of the policy and the survey, and was in writing; that the survey, by the terms of the policy, either constituted a part of the contract, or was a written representation on which the same was based, and in either case, the stipulation therein, relating to the watch, although not a warranty, yet, if material, must be substantially complied with; and that the parol evidence offered, and any parol evidence, was inadmissible, to vary the obligations of the parties, expressed in the policy and survey, especially in relation to the watchman, it being conceded, that the omission to keep a watchman, during a part of Saturday and Sunday nights, as above stated, was material to the risk.

The defendants further claimed, that, inasmuch as the contract between the parties, consisting of the policy and the survey, was in writing, it was for the court, and not for the jury, to determine, whether the reference to the survey contained in the policy was or was not exclusively for the purpose of identifying the property, and whether the whole

contract between the parties, as it existed at the date of the
policy, was or was not contained in the policy and survey.

But the court, for the purpose of enabling the jury to pass
upon the evidence, admitted the same, *pro forma.*

On the trial, the defendants introduced much testimony,
which they claimed showed, that the policy had never been
delivered to, nor accepted by, the plaintiffs, and that the
premium thereon had never been paid, and consequently,
that no valid contract existed between the parties.

The plaintiffs claimed, on the other hand, that the testi-
mony showed, that said policy had been delivered to them
by the defendants, and that they had received and accepted
the same ; that, as the agents of the defendants were au-
thorized to fill up, countersign and deliver policies, at
their discretion, and, upon the delivery thereof, became
chargeable themselves, with the premiums to the defend-
ants, whether they had been received or not, they necessa-
rily had the power and authority to waive the fifth condition
of the policy, which provided, that no insurance should be
considered as binding, until the actual payment of the pre-
mium ; and if they had not, necessarily, this power, the jury
might therefrom legally and rightfully infer and find, that
they had such authority.

The court instructed the jury, that, in order to render the
policy binding upon the defendants, it was necessary that it
should have been delivered, as such, by the defendants, and
received by the plaintiffs ; and that, whether there had been
such delivery and acceptance, was a question of fact, for
them to determine, upon the evidence before them.

That, in relation to the premium, the defendants had a
right to prescribe the conditions upon which they would
issue their policies, and also to waive a strict compliance
with the same, and that, if they had made an absolute and
unqualified delivery of the policy, without requiring the pay-
ment of the premium to be thus paid, they could not after-
ward object to the validity of the policy, upon the ground

that such premium had not been paid; that, if the jury should find, that there had been an actual delivery of the policy, and an acceptance of the same, by the plaintiffs, it was a question of fact, for them to determine, whether there had been a waiver of a strict compliance with the terms of the policy, in relation to the payment of the premium; that it was competent for the defendants to make such waiver, by themselves, or by their duly authorized agents; that their agents, Plunkett & Hurlburt, who forwarded the policy to the plaintiffs, could not waive the payment, unless authorized so to do; and whether they had not authority, was also a question of fact for them to consider and determine.

The jury having returned their verdict in favor of the plaintiffs, the defendants moved for a new trial, claiming that the court erred, in admitting the testimony objected to by them, and in not instructing the jury, as claimed by them.

*Perkins* and *Chapman*, with whom was *Deming*, in support of the motion, contended, 1. That the policy and survey constituted one contract, and, the latter being in writing, parol evidence was inadmissible, in the same manner as if both were written on one piece of paper.

2. That, if any question existed, as to the purpose for which the reference to the survey was made, in the policy, or as to the admission of parol evidence to any specific point, it was to be decided by the judge, and not by the jury.

3. That the survey was substantially a part of the contract, appears from the form and circumstances of the reference, the terms of the policy, and the terms of the survey; and although not strictly a warranty, so far as relates to the *watch*, the survey was to be substantially complied with. 10 Pick., 302. 2 Wood. & Min., 472. *The Glendale Woolen Co.* v. *The Protection Ins. Co.*, 21 Conn. R., 34. 13 Wend., 92. *Farmers' Ins. Co.* v. *Snyder*, 16 Wend., 481. 2 Hall, 589. *Houghton* v. *Mutual Ins. Co.*, 8 Metc., 114. 6 Cush., 440.

4. That the rule, excluding parol evidence, applies to this case, and to all contracts evidenced by two writings, as well as by one. 3 Cowen & Hills' Notes on Phil. Ev., 1422. *Alston* v. *The Mechanic's Insurance Co.,* 4 Hill, 340. *Jennings* v. *Chenango Ins. Co.,* 2 Den., 75. 10 Pick., 230. *Reading* v. *Weston,* 7 Conn. R., 143. 8 Conn. R., 120. *Palmer* v. *Gurnsey,* 7 Wend., 248. 14 Mass. R., 15, 154. 1 Taun., 115. *Richardson* v. *Churchill,* 5 Cush., 425. 14 Mass. R., 106.

5. That the policy was not delivered and accepted, and that there was no waiver of the premium.

*Hungerford* and *Toucey,* contra, contended, 1. That the survey was no part of the policy, nor were the statements therein warranties; in which particular, the case differs essentially from that of the *Glendale Woolen Co.* v. *The Protection Ins. Co.,* 21 Conn. R., 19. The reference was made in the policy, to the survey, with a view merely of designating the building, in which the property insured then was, or was to be, and it was the duty of the court so to decide, if, as claimed by the defendants, it was to be decided as a question of law merely; but, in that event, if the court left it to the jury, the defendants have no ground of complaint. *Jefferson Ins. Co.* v. *Cotheal,* 7 Wend., 72. *The Farmer's Ins. and Loan Co.* v. *Snyder,* 16 Wend., 481, and authorities cited. *Pawson* v. *Watson,* Cowper, 785. *Harlow* v. *Thomas,* 15 Pick., 66.

2. Admitting that it does not explicitly appear, upon the face of the policy, for what purpose the reference is made, parol testimony was admissible, to explain it, and to show the accompanying circumstances and the application of the reference. *Cole* v. *Wendel,* 8 John. R., 116. *Ely* v. *Adams,* 19 John. R., 317. *Fish* v. *Hubbard's admr.,* and authorities cited. 21 Wend., 651. *Cartlett* v. *Pacific Ins. Co. of New York,* 1 Wend., 561. *Hart* v. *Hammett,* 18 Verm. R., 127. *Peisch* v. *Dickson,* 1 Mason, 10. *Mechanic's Bank* v. *Bank*

*of Columbia,* 5 Whea., 326. *Bradley* v. *Washington St. Boat Co.,* 13 Pet., 89. *Brainerd* v. *Cowdrey,* 16 Conn. R., 1. *Baldwin* v. *Brown,* 17 Conn. R., 201. *Birch* v. *Depeyster,* 2 E. C. L., 359. *Smith* v. *Doe,* 6 E. C. L., 208.

3. Admitting that the statements in the survey are all referred to, as representations, (and it was admitted by the defendants, on the trial below, that they were no more,) parol testimony was admissible to show, that the defendants knew, as to the facts, and were not led astray, by any erroneous statement therein contained. Because, 1. A representation is no part of the contract, but a mere statement of a fact. or facts, operating, or supposed to operate, as an inducement to it, or the reverse; and a misrepresentation in insurance, is always classed under the head of fraud. Hughes on Insurance, p. 347; as to representations, 306, 307; as to warranties, *Alston* v. *Mechanic's Mutual Ins. Co.,* 4 Hill, 329. 2. A written representation, being mere evidence of a fact, and no part of the contract, does not fall within the rule, that parol evidence may not be admitted, to vary, control or contradict the writing. *McRea* v. *Purmort,* 16 Wend., 473.

4. If the defendants knew, at the time of issuing the policy, the true state of the facts, even if there had been a misrepresentation in the previous statements, the previous representation would be entirely immaterial, as the defendants were in no wise led astray thereby. *Stafford* v. *Newsom,* U. S. Dig., vol. 10, p. 123, § 8. *Clopton* v. *Cozart,* 13 Sm. & Mar., 363.

5. In the charge of the court, in regard to the delivery and acceptance of the policy, there was no error. Whether it was delivered and accepted, or not, was a mere question of fact, for the jury, if there was any evidence proper to be submitted to them; and, so far as it regards the matter of fact, the jury have found, that the policy was delivered and accepted, which is final, unless the judge, in instructing them, mistook the law.

ELLSWORTH, J. Three questions are presented for our consideration. 1. The propriety of introducing parol·testimony ; 2. The incompleteness of the contract of insurance ; 3. The non-payment of the premium. The two last are resolved chiefly, if not entirely, into questions of fact, for the jury, which we shall not discuss, since some evidence was properly before them, for their consideration. If they have mistaken its force, this motion will not give the defendants redress. As to the first question, we think there must be a new trial.

The defendants claim, that the entire contract has been reduced to writing ; their part, in the policy of insurance ; the plaintiffs' part, in the questions and answers in the survey, so called, referred to in the body of the policy. The defendants say, these stipulations and conditions, though not specifically repeated in the policy, are, by·reference, made to constitute a part of the contract, as fully as if the survey had been incorporated at full length ; and that the survey being in writing, is so precise, and free from ambiguity, that parol testimony can not be admitted to explain or qualify it, without denying first principles. On the other hand, the plaintiffs claim, that the survey is not referred to, to express the stipulations obligatory on the insured, but for the purpose of designating and identifying the building in which the property is to be kept or manufactured, and that the *true* representation was, the statement made by John S. Fenn, to the agent. The plaintiffs make no question, that they have not kept the stipulations and conditions contained in this survey, as it reads, and especially, that they have not kept a watch in the mill, as required in the answer to the eighth interrogatory ; as this court held was required, in the case of the *Glendale Woolen Co.* v. *The Protection Insurance Co.*, in the 21st Conn. R., and that they have no case here, if the entire survey is held to be binding. Nor do they pretend, that this stipulation is unimportant, but they insist, that the survey is not *their* representation, and that the true

representation was, as we have said, the statement made to said agent, by said Fenn, a short time before the issuing of the policy.

We are persuaded, the view taken by the defendants' counsel, is the true one. All the survey, as much as any part of it, is incorporated into the policy of insurance, and constitutes the conditions of the plaintiffs' contract; and hence, every part, applicable to the subject matter, (and the eighth interrogatory certainly is,) is to be regarded as obligatory on the insured, whether the survey is to be held a warranty, as in the policy, or a representation material to the risk, to be substantially kept and performed, which latter is the character we are inclined to give it. We know no reason why a writing, intended to be a part of a contract, may not be held to be incorporated into it, by a proper reference, as well as by an extended recital. The reference in this case, in our judgment, is of such a character. It was made, we think, to show what then were and should continue to be, the stipulations of the plaintiffs, touching the property insured. This the plaintiffs deny: they say it was for the description and identification of the factory building. Now it seems to the court, that this purpose was altogether unnecessary and superfluous, since it was already stated in the policy, that the building was a factory building, occupied by the plaintiffs, situated in Glendale. If more than this was wanted, as the ground assumed by the plaintiffs seems to allow,—*viz.*, a more minute description of the buildings, it was, that the insurers might be better informed of the risk, so far as these particulars were important, in estimating the degree of it. But if so, are not the other parts of the survey equally important and obligatory, and especially the eighth interrogatory and answer? It is incredible, that the insurers were so anxious to know more minutely the size and kind of material of the factory building, &c., and therefore incorporated the survey into the policy, to secure themselves to that extent, while other parts

N. Sheldon & Co. *v.* The Hartford Fire Insurance Co.

of the survey, touching the use and condition of the building, equally important, are passed over, as unworthy of attention; such as the kind of business to be done in the mill, the mode of heating and lighting it, the position of water casks and forcing pumps, the kind of stoves and fuel used in the mill, the continuance of a watch by night, with a good watch-clock, to ensure constant watchfulness; the number of hours in the twenty-four, the factory is run; in what manner friction matches are kept in the mill; that no smoking or drinking of liquor is to be allowed on the premises; whether the mill is run by the proprietor or tenants; the existence of an organized fire company in the neighborhood, and the like. Who has a right to say, that any of these are not conditions and stipulations, meant to be incorporated into the policy, when the survey is referred to, generally, for information? The directors of the company must have been beside themselves, not to have secured the company at all, in these and the like particulars; but it is so, if the survey is to be rejected.

When the plaintiffs admit, that, by the reference, the survey becomes a part of the contract, to the extent they allow in argument, we think they yield the question to their opponents; as, after this, they can not make a sensible distinction between what they admit, and what the defendants claim.

Besides, if the survey is to be rejected by the plaintiffs, except to the extent admitted, where are we to look for *any* stipulations and conditions, on the part of the insurers? or are there none? Is *this* (a case of more than ordinary importance) an exception to all others? Can we believe that, with the vigilance of the defendants, manifested by their requiring a printed survey of numerous and most discriminating questions, to be forwarded to the company, that they may have full information of anything material to the risk, they wanted only to know in this instance, the description

and identification of the factory building, and for that purpose, made reference to the survey ?

It should be remembered, likewise, that this survey had been made some five months before the date of this policy, in behalf of these plaintiffs,and was sent by the very agents who issued the present policy, to the Protection Insurance Co., who had issued a policy upon that survey, payable, in case of loss, to the plaintiffs. There it remained, and reference was made to it, *as there*, and we can not doubt, it was meant and agreed by all parties, that it should be referred to, as the proper and true survey, in this case,

On the whole, viewing this survey as the contract of the plaintiffs, the case already mentioned, in the 21st of Conn. R., settles the question; there, upon a kindred question, we held, that the eighth interrogatory and answer were a *clear, certain* and *definite* contract, not susceptible of ambiguity, and not open to parol proof.

If Mr. Fenn's story, which is denied by the agent of the defendants, (and he made the contract of insurance, and issued the policy in pursuance thereof,) is true, then it is obvious, the policy and survey do not contain the true contract between the parties, and should have been amended ; but this can have no effect in this case ; we take the writings as they are.

In this opinion, the other judges concurred, except WAITE, J., who tried the cause in the court below, and was therefore disqualified.

New trial advised.