BLUMER and another vs. THE PHŒNIX INSURANCE COMPANY OF BROOKLYN.

*February 9 — February 24, 1880.*

| 48 | 535 |
|----|-----|
| 74 | 473 |
| 48 | 535 |
| 101 | 418 |
| 48 | 535 |
| 107 | 469 |

FIRE INSURANCE. *What answers in application a continuing warranty.*

1. The views of this court expressed in the opinion upon the former hearing of this cause (45 Wis., 622), adhered to. ˙
2. To the questions in a form of application for insurance, prepared by the insurer, "Is there a watchman in the mill during the night? Is the mill ever left alone?" the applicant answered, "No regular watchman, but one or two hands sleep in the mill." *Held,* that the answer was responsive to the questions, and a continuing warranty.

   [TAYLOR, J., dissents, holding that the court should in no case treat such an answer as a continuing warranty, unless it can determine as matter of law that the continuance of the custom stated would lessen the risk; and that the court could not so determine in respect to the answer here in question.]

· APPEAL from the Circuit Court for *La Crosse* County.

After the former decision in this cause, reported in 45 Wis., 622–660, a rehearing was granted. On such rehearing, a brief was filed for the plaintiffs signed by *M. P. Wing* and *G. C. Prentiss,* as attorneys, with *S. U. Pinney* and *P. L. Spooner,* of counsel, and there was oral argument by Messrs. *Spooner, Pinney* and *Wing.* For the defendant, there was a brief by *Cameron, Losey & Bunn,* its attorneys, and a separate brief by *Jenkins, Elliott & Winkler* and *D. S. Wegg,* of counsel, and oral argument by *Mr. Wegg.*

ORTON, J. The opinion of the court upon the first hearing of this cause (45 Wis., 622), expressed at the time, and still

expresses, the views of this court upon all of the questions considered therein. The reärgument has not weakened that opinion, and, we think, has tended strongly to confirm it.

The leading question is a very narrow one, and rests upon the logical relation and commonly accepted meaning of the question and answer upon which the verdict was ordered for the defendant, viz.: "Is there a watchman in the mill during the night? Is the mill ever left alone?" The first part of this question is, in itself, literally incomplete, and insufficient to express the inquiry whether a watchman is *constantly kept* in the mill during the night; for it is, whether *at any time* during the night there is a watchman in the mill. The other part of the question, "Is the mill *ever* left alone?" supplies this literal deficiency; and both parts together express the full inquiry, whether there is a watchman in the mill *all the time* during the night. This meaning is intensified by the language "is the mill *ever* left alone?" This meaning of the question is so obvious as to scarcely bear discussion. Its purpose most clearly was to ascertain whether any person was kept in the mill in charge of it and to watch it during the night, as a precaution against fire. The question most naturally and logically suggests such an answer as would satisfy the object and purpose of the inquiry; and we think such an answer was made. "No *regular* watchman, but one or two hands sleep in the mill," — that is, one or two hands are *constantly* in the mill, for they sleep there during the night, and *they* act as watchmen.

This answer satisfies the inquiry in every particular, and is directly responsive to the question. Without the last part of the answer, it is very clear that the first part would not be responsive to the first part of the question, "Is there a watchman in the mill?" "No *regular* watchman." The insured is not asked whether there is a *regular* watchman in the mill, and therefore this part of the answer is not responsive.

The question is, whether there is a watchman of any kind

in the mill during the night, or, is the mill *ever* left alone? The answer is directly responsive to the whole question, and its obvious meaning is, "Yes, there is a watchman in the mill during the night, for one or two men sleep in the mill who act as such, and therefore the mill is *never* left alone."

It is conceded by the learned counsel of the appellants, that, if the answer was responsive to the question, then both the question and the answer were material to the risk, and constituted a warranty that would continue during the life of the policy, as a matter of law; and such is unquestionably the law. "The inquiry and answer are tantamount to an agreement that the matter inquired about is material, and its materiality is not, therefore, open to be tried by the jury." May on Ins., § 185.

The learned counsel for the appellants, in speaking of this rule, says in his brief, and very correctly: "The essence of this rule is an implied assent of the insured to the insurer's view as to what is material to the risk. The question must, therefore, indicate clearly what the insurer does deem material."

Tested by this rule, can there be any doubt that the insurer intended this inquiry to be material, and that the insured assented to this view? This being our opinion of the materiality of both the question and answer, and that the language is not susceptible of any other construction, or indeed liable to any doubtful or uncertain construction, the positions assumed by the learned counsel, and their very able arguments, and the numerous authorities cited by them in their support, upon any other premises or hypothesis, are inapplicable and need not be considered.

This opinion, upon this important question, might be greatly extended, and perhaps ought to be, if for no other reason, to show proper deference to the distinguished counsel, and their very able and exhaustive treatment of the subject on the argument; but the former opinion of the court by Mr. Justice

Lyon is so full, fair and satisfactory, that anything further would be a mere repetition and supererogation.

The only other question which need be considered, is that of a waiver by the company of the conditions and warranties of the policy. This question was not deemed of sufficient importance, or as raised on sufficient evidence, to command attention at the trial, or on the former argument; and we are now unable to find in the testimony any such acts of waiver by the company, after knowledge of the facts of forfeiture, as bring the case within the authorities on this question. *Miner v. Phœnix Ins. Co.*, 27 Wis., 693; *Webster v. Phœnix Ins. Co.*, 36 Wis., 67; *Gans v. St. Paul F. & M. Ins. Co.*, 43 Wis., 108; *Northwestern Ins. Co. v. Germania Ins. Co.*, 40 Wis., 446.

The judgment of the circuit court must be affirmed, with costs.

TAYLOR, J. I dissent from the opinion of the court in this case, for the reasons stated in my dissenting opinion filed upon the former argument of this case.

In that opinion I stated what I then thought, and still think, is the true rule for the determination of cases of this kind, as follows: " None of the cases go further than this, that where a question, in an application for insurance, relates to the manner of using a mill or other manufacturing establishment upon which insurance is sought, or to the precautions taken against fire, and the answer is affirmative or negative, if the court can determine from the question and answer, as a matter of law, that the continuance of the custom or use, as the answer states it to be, will lessen the risk, such answer will generally be held to be a continuing warranty; but when the custom or use is such that the court cannot say, as a matter of law, that its continuance will necessarily lessen the risk, it will not be held to be a continuing warranty unless it be expressly so agreed in the contract." After a very careful

examination of the authorities, I am satisfied that the rule above stated is supported by an overwhelming weight of authority, and is fully sustained by the fundamental rules of construction applicable to contracts of this nature.

That this court cannot say, as a matter of law, that the fact that " one or two hands slept in the mill " did in fact lessen the risk, was clearly demonstrated by the learned counsel for the appellants upon the argument, and I do not understand that a majority of the members of this court hold otherwise. It is not denied that, in this case, the question whether there was a continuing warranty, is dependent upon the construction which shall be given to the language used. Clearly the language itself does not necessarily imply that there was a continuing warranty that the hands should sleep in the mill during the running of the policy. The language used is certainly as susceptible of a meaning which limits it to the present and past *status* of things as to the future; and to extend it to the future depends upon construction; and the intention of the parties to be derived from all the circumstances attending the making of the contract, as well as the nature of the contract itself, ought to control such construction. If it cannot be said, as a matter of law, that the continuance of the custom would be beneficial to the insurance company, how can we infer that it was the intention of the parties that it should extend to the future? If we cannot say, as a matter of law, that the insurance company would be benefited by the continuance of the custom, there certainly does not arise any presumption, from the nature of the custom itself, that the company intended it should be so continued.

If the answer had been that " no watch was kept," would there have been any presumption that the insurance company intended to bind the assured to continue the custom of not having a watch during the continuance of the policy? Such presumption would be little less than an absurdity. So in any case where the court cannot, as a matter of law, say that

the custom is beneficial, and it remains an open question as to whether it is beneficial or prejudicial, there is certainly no reason for holding that it was intended the custom should continue. If the custom is neither beneficial nor prejudicial to the insurance company, why should it be construed to be a warranty that it shall continue? The only result of so holding is, that the insurer may, upon a doubtful construction of the contract, import into it a warranty as to a wholly immaterial matter, the breach of which, on the part of the insured, shall forfeit the policy. Contracts are not thus liberally construed for the purpose of importing into them conditions subsequent, for the mere purpose of creating forfeitures by their breach, without showing any damage arising from such breach.

Justice LYON, in his opinion on the first hearing of this case, undoubtedly felt the force of this position, and, in order to strengthen the opinion upon the main question, stated it as his opinion that, as a matter of law, the continuance of the custom was material to and lessened the risk. With great deference to the judgment of the learned justice, I think the question whether it was material to the risk is not a question of law for the court, but one of fact for the jury; nor is it a question upon which one not an expert in the insurance business would be permitted to give an opinion as a witness upon the issue as to whether it was or was not material to the risk. That there is nothing in the form of the questions in the application, nor in the answer, from which the court can say that it was made material by the parties by the contract itself, is, I think, fully shown in my former opinion.

I am unable to add anything further to the argument made in my opinion filed on the first argument of the case, against the views held by the majority of the court, and will only add the following case to those heretofore cited, lately decided by the supreme court of Pennsylvania: *Knecht v. Life Ins. Co.*, Albany Law Journal, January 31, 1880, p. 192, which I think tends to support my views of this case.

AUGUST TERM, 1879. 541

I think the learned circuit judge erred in directing a verdict for the defendant, and that the judgment of the circuit court ought to be reversed.

*By the Court.* — Judgment affirmed, with costs.