[No. 1278.   Decided October 23, 1894.]

GEORGE E. HART *et al.*, *Respondents*, v. NIAGARA FIRE IN-
SURANCE COMPANY, *Appellant*.

INSURANCE — AUTHORITY OF AGENT — LIMITATION BY POLICY —
CONDITIONS IN POLICY — BREACH — INSTRUCTIONS.

Although a policy of fire insurance may recite that it is void, "if
the interest of the assured be other than unconditional and sole
ownership," yet, where no questions were asked by the company's
agent of the assured, prior to the issuance of the policy, relating to
his title to the property, and no references as to the title were made
by him, the company is estopped from denying the ownership of the
assured therein.

Where a solicitor for an insurance company is in fact and in law
the agent of the company, the principal cannot be relieved of re-
sponsibility for the knowledge and acts of such agent by a recital
in the policy of insurance that he shall be deemed the agent of the
assured.

Where a condition in an insurance policy upon a mill, requiring
the assured to constantly keep a watchman upon the premises
when the mill is not in operation, is not by the terms of the con-
tract expressly made a warranty on the part of the assured, the
failure to keep a watchman will not prevent the assured from re-
covering for a loss by fire, unless such fire was due to the failure to
keep such watchman.

An instruction to a jury in a civil case, charging that they "should
be satisfied by a *clear* preponderance of proof" before they can find
certain facts is not misleading, when the court has just charged the
jury that "it is not required in a civil action to establish the facts
beyond a reasonable doubt as in a criminal case, but a fair prepon-
derance of proofs is all that is required."

*Appeal from Superior Court, Pierce County.*

*Crowley, Sullivan & Grosscup*, for appellant.

*Snell & Johnston*, and *Parsons, Corell & Parsons*, for re-
spondents.

The opinion of the court was delivered by

DUNBAR, C. J.— This action was brought in the supe-
rior court of Pierce county by the plaintiffs to recover

from the defendant, the Niagara Fire Insurance Company, the sum of $940, plaintiffs claiming that amount due them upon a policy of insurance issued by the defendant company to George E. Hart, and assigned by him to the co-partnership of Hart & Jewell, the property covered by the insurance being certain mill property situated near the city of Tacoma. The interest of the Pacific National Bank as plaintiff in the suit arises by virtue of the chattel mortgage made by the co-partnership firm of Hart & Jewell to secure the payment of $4,000 to the bank, the policy of insurance providing that the loss should be paid to the plaintiff bank. There was also other insurance upon the property placed in other companies, making the total insurance of the company $10,000. The policy of insurance was issued on the 17th day of October, 1892. On the 18th day of October the interest of Hart was transferred to the co-partnership firm of Hart & Jewell. The mill was burned on the 30th day of November, 1892, while the policy of insurance was in full force, if it had not been forfeited.

Plaintiffs alleged their loss, $10,500; alleged due notice of the fire and loss thereby to the defendant company, in conformity with all the terms and conditions of the policy; alleged that they performed and carried out all the terms and conditions required of them in said policy of insurance; that proof of loss was furnished and received by the corporation, and that sixty days had elapsed since said proof was furnished, etc. Subsequent to the commencement of the action, Hiram Jewell, whose name appeared in the original action, upon motion was dismissed as one of the plaintiffs; whereupon plaintiff Hart and the plaintiff Pacific National Bank filed a supplemental complaint making said Jewell a defendant. As this action of the court does not seem to affect the questions in controversy we will not further notice it.

The policy was an ordinary insurance policy and contained the usual terms and conditions of such policies. The particular provisions of the policy which the defendant claimed in its answer and on the trial of the cause to have been violated are as follows:

(1.) "This entire policy, unless otherwise provided by agreement, endorsed hereon or added hereto, shall be void . . . if the hazard be increased by any means within the knowledge of the insured, . . . or if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple.

(2.) "It is understood and agreed that during such time said mill is idle, or not in operation, a watchman shall be employed by the insured to be in and upon the premises constantly, day and night."

It eventuated that the mill insured was built on leased land, the same being school land which was not subject to sale, but which had been leased by the respondents from the county commissioners of Pierce county. It is denied that the policy was issued by the company with knowledge of the location and situation of the property, except as the same was shown in the description in the policy itself; denied that they had any knowledge or information as to whether the plaintiffs at the time of the fire had an interest in the property described in the policy to an amount exceeding the aggregate of the amount of all sums mentioned in the complaint, or any other amount; denied that they had ever made a contract of insurance with the plaintiffs, or either of them, except upon the conditions and rules of the policy annexed to the complaint; denied that the mill was burned without any fault of the plaintiffs; that any sum whatever was due from them to the plaintiffs; and denied that the plaintiffs had performed all the conditions and requirements of the policy. Affirmatively averred the conditions of the policy mentioned above, and further

averred that the fire, by which the property mentioned in the complaint was destroyed, was kindled or caused to be kindled by the plaintiff Hart, intentionally, for the unlawful purpose of thereby procuring from the defendant and his other insurers the indemnity by them stipulated to be paid under the terms and conditions of the several policies; alleged that one Joseph F. Smith was at the time the policy was issued the owner of an undivided one-half of the property insured, and continued to be such owner until November, 1892.

The reply averred that the person who received the application for the policy was, before said policy was issued, specifically and fully told, informed and apprised of the fact, and fully knew that the property stood on ground owned and held by the State of Washington as school land, etc., and that the policy was issued with the knowledge of such facts; and alleged that it was the fault, neglect and wrong doing of said defendant in drawing the said policy of insurance that he did not state that the interest of said Hart was a leasehold interest. The other affirmative matters in the answer were denied by the reply. Upon this state of pleadings the case went to trial. Judgment was rendered in favor of the plaintiff for the sum of $940.79, with interest and costs.

There are three main propositions of law discussed in this case: (1) Did the court err in instructing the jury that the defendant company was estopped from denying the ownership of Hart in the ground on which the mill property insured was located, if, prior to the issuance of the policy, no questions were asked of Hart relating to the title of the ground, and no references were made by him as to the title? It is conceded by the appellant that, under the undisputed testimony in this case, this instruction would be sustained by the rule announced by this court in *Mesterman v. Home Mutual Ins. Co.*, 5 Wash. 524 (32

Pac. 458), and that Hansen would be considered the agent
of the defendant company, were it not for the fact that the
policy contained a provision that "in any matter relating
to this insurance no person, unless authorized in writing,
shall be deemed the agent of this company;" but that, by
reason of the incorporation of this provision in the policy,
Hansen became the agent of the insured instead of the in-
surer.    If, as was said by the court in *Mesterman v. Home
Mutual Ins. Co.*, *supra*, the better reason is in favor of the
rule that an insurance company is estopped from asserting
the invalidity of its policy at the time it was issued for the
violation of any of the conditions of said policy or the ap-
plication therefor, if, at the time it was so insured, the
fact of such violation was known to the company or its
duly authorized agent; the respective rights of the parties
ought not to be changed by any mere form of words which
is placed in the policy, when the facts and the relations of
the parties remain exactly the same.    If, under the legal,
well established and universally understood definition of
agency, the solicitor is in law and in fact the agent of the
company, it should not be allowed to escape its responsi-
bilities by a simple device of words which flatly contradict
the true meaning of the contract.

It is true enough that it is in no sense the duty of the
courts to make contracts for parties, but it is equally true
that it is their duty to prevent the evasion of honest re-
sponsibilities by the interjection into one-sided contracts of
statements which in a hidden manner, when technically
construed, serve only to destroy the honestly intended and
mutually understood conditions of the contract.    If, in
other words, the solicitor is actually the agent of the com-
pany, sent out by it to solicit business for it, receiving his
instructions from the company, receiving his pay from the
company, using blank forms prescribed by the company,
and liable to discharge by the company, it would be a trav-

esty on the administration of justice, which would shock the sense of every right thinking person, to allow a company to escape a just responsibility by interjecting a provision in a policy denying this patent fact; especially in a case of this kind where there was no written application, which is the document to which the attention of the assured is especially called, the one which he signs, and the one for which he ought to be held most strictly accountable. Even when a written application is made, the courts have almost universally held that where the assured gave proper answers to the questions and the agent who acted as the scrivener wrote them down falsely, the company could not on that account escape its liability in case of damage. See 2 Wood, Fire Insurance, p. 837, and cases cited. What difference would it make in principle, in a case of that kind, to state in the policy that the agent should be considered the agent of the insured instead of the insurer — a technical statement of which only a lawyer knows the meaning, and which is incorporated after all the negotiations are completed. This position is not only sound in reason and in morals, but is also well sustained by authority, although it must be regretfully admitted that there is some conflict of authority on this question.

In discussing the question the court, in *Kausal v. Minnesota Farmers' Mutual Fire Ins. Ass'n*, 31 Minn. 17 (16 N. W. 430), after stating the rule that the agents of insurance companies authorized to procure applications for insurance, and to forward them to the companies, must be deemed the agents of the companies, among other things, says:

"After the courts had generally established this doctrine, many of the insurance companies, in order to obviate it, adopted the ingenious device of inserting a provision in the policy that the application, by whomsoever made, whether by the agent of the company or any other person, shall be deemed the act of the insured and not of the insurer. But, as has been well remarked by another court, 'there is no

magic in mere words to change the real into the unreal.   A device of words cannot be imposed upon a court in place of an actuality of facts.'   If corporations are astute in contriving such provisions, courts will take care that they shall not be used as instruments of fraud or injustice.   It would be a stretch of legal principles to hold that a person dealing with an agent, apparently clothed with authority to act for his principal in the matter in hand, could be affected by notice, given after the negotiations were completed, that the party with whom he had dealt should be deemed transformed from the agent of one party into the agent of the other.   To be efficacious, such notice should be given before the negotiations are completed.   The application precedes the policy, and the insured cannot be presumed to know that any such provision will be inserted in the latter.   To hold that, by a stipulation unknown to the insured at the time he made the application, and when he relied upon the fact that the agent was acting for the company, he could be held responsible for the mistakes of such agent, would be to impose burdens upon the insured which he never anticipated.   Hence we think that if the agent was the agent of the company in the matter of making out and receiving the application, he cannot be converted into the agent of the insured by merely calling him such in the policy subsequently issued.   Neither can any mere form of words wipe out the fact that the insured truthfully informed the insurer, through its agent, of all matters pertaining to the application at the time it was made.   We are aware that in so holding we are placing ourselves in conflict with the views of some eminent courts.   But the conclusion we have reached is not without authority to sustain it, and is, as we believe, sound in principle and in accordance with public policy.   Wood on Insurance, § 139; May on Insurance, § 140;   *Commercial Ins. Co. v. Ives*, 56 Ill. 402;   *Gans v. St. Paul, F. & M. Ins. Co.*, 43 Wis. 108;   *Columbia Ins. Co. v. Cooper*, 50 Pa. St. 331.''

This case is cited by 2 Wood on Insurance, p. 838, and the same principle is announced in many other cases.

Appellant's second objection is, we think, also untenable. The instruction of the court on that head was as follows:

"And if you further find from the evidence that at the time of the loss the interest of the plaintiff Hart and Hiram Jewell in the property insured was sole and unconditional ownership, excepting as to the interest of the Pacific National Bank, then the defendant company is estopped from urging these differences and the conditions of the policy with reference thereto would be immaterial."

It will be seen that under the instruction of the court the company could only be estopped in case the jury found that Hart and Jewell were the sole and unconditional owners of the property insured, excepting the interest of the Pacific National Bank. If that were true, of course the company would be estopped from urging the defense of non-ownership, and the jury, under this instruction, could, and doubtless did, determine the controversy between Hart and Smith in relation to the ownership of the property insured, and evidently found on that proposition in favor of Hart.

The third contention is, that the court erred in modifying the request of the defendant to charge the jury that if they believed from the evidence that if at any time during the existence of the policy the insured failed to keep a watchman when the mill was not in operation, plaintiffs could not recover, by adding "unless you further find from the evidence that said fire was not due to, or the result of, their failure to keep such watchman;" the provision in the policy being, "It is understood and agreed that during such time as said mill is idle or not in operation a watchman shall be employed by the insured to be in and upon the premises constantly day and night." The contention of the appellant is, that the terms of the policy constitute the measure of the insurer's liability, and in order to recover the insured must show himself within these terms. In other words, that compliance of the insured with the terms of the contract is a condition precedent to the right to recover.

The respondents seek to draw a distinction between a contract with an accompanying provision that if a certain agreement is broken it shall work a forfeiture of the contract, and an agreement without such provision, urging that, in this instance, if it had been the intention of the parties to the contract that a breach of the agreement should work a forfeiture they would have expressly said so in the contract. The investigation of this question has been somewhat perplexing owing to the fact that the authorities cited are not exactly in point, and the adjudicated cases which we have been able to investigate on our own motion in but very few instances decide this identical point. Most of the cases cited by appellant are cases where representations have been made in the surveys or applications, and the question is discussed whether such representations are continuing representations, or promissory representations or warranties. But in most of them it appears that there was an express stipulation, either in the application or the policy, that the violation of the agreement should work a forfeiture.

Thus, in *Blumer v. Phœnix Ins. Co.*, 45 Wis. 622, in the written application for insurance of the mill against fire, the applicant, in answering the question whether the mill was ever left alone, and whether there was a watchman in it during the night, said: "Not a regular watchman, but one or two hands sleep in the mill." By a stipulation in the same instrument it was held that the statements were a full, true and just exposition of all the facts and circumstances, and were offered as a basis of the insurance requested, and were made a special warranty. And the court held that, "in view of these stipulations the answer above recited was an express warranty by the assured that one or two of his employés lodged in the mill each night, and was also a promissory and continuing undertaking which bound him to a substantial compliance with its terms during the

life of the policy.'' The case of *Blumer v. Phœnix Ins. Co.*, 48 Wis. 535 (4 N. W. 674), was on the same state of facts. The question does not seem to be discussed at all in appellant's third citation, *Rankin v. Amazon Ins. Co.*, 89 Cal. 203 (26 Pac. 872). In that case the court simply held that under the undisputed testimony concerning the breach it was error for the court to submit the question to the jury. In *Glendale Mfg. Co. v. Protection Ins. Co.*, 21 Conn. 18, one of the conditions of the policy was, that the survey and description of the property should be deemed a part of the policy and a warranty; thus stipulating the existence of the fact under discussion in this case. In *Sheldon v. Hartford Fire Ins. Co.*, 22 Conn. 235, the main point decided was that the reference to the survey in the policy conceded it to be an entire contract; but the court decided in that case that, where one of the interrogatories was, ''Is there a watchman in the mill during the night?'' to which the answer was, ''There is a watchman nights,'' the answer was not a warranty, but a representation material to the risk to be substantially kept and performed. In *Wilson v. Hampden Fire Ins. Co.*, 4 R. I. 159, the court was only construing what the parties themselves had stipulated to be a warranty. This plainly appears from the language of the opinion on page 170, where the court says:

''Considering every answer in this application, as the parties have expressly made it, a warranty, we have not asked ourselves how material the answers in question may be to the risk, since that has been already determined by the parties for themselves. They have made the truth of each and all of the answers in this application a condition precedent to the right of the assured to recover on this policy, and we have therefore confined ourselves to the humbler office of construing their language, instead of rising to the consideration of the materiality of the facts about which they have chosen to employ it.''

Thus it will be seen that the question at issue here, was

there confessed, and the argument of the court was based on that confession. And so with most of the cases cited by appellant. While it does not always directly appear, in most of the cases it can be plainly inferred, that either in the application or policy there has been a positive assertion of a warranty. The citations made by appellant in its reply brief, from Wood on Insurance, seem to be in point so far as many of the statements made by the author are concerned; but when the cases upon which the author bases the statement made in the text are traced out they are nearly all found to contain a stipulation that the policy should be void if the conditions stipulated are not true or are not maintained, as the case may be. It must be admitted, however, that some few of the cases seem to maintain appellant's position, notably *Ripley v. Ætna Ins. Co.*, 30 N. Y. 136, and *First National Bank v. Insurance Company of North America*, 50 N. Y. 45. It does not appear from an investigation of those cases that any substantial warranties were made, and the definition by Wood of a promissory warranty, cited in appellant's reply brief, is based upon these two cases, which are cited by that authority. There are also some cases which sustain respondents' contention, although, as we have said before, this identical question has been seldom adjudicated.

It will be observed that in the main body of the policy in the case at bar there is no agreement concerning a watchman. That provision appears on a small slip of paper pasted on the face of the policy. It does not appear with, and has no logical connection with or relation to, the warranties expressed in the policy. It is especially stipulated that if any of the conditions provided for between lines 7 and 30 are violated, the policy shall be deemed void. With line 31 the policy begins to recite regulations and conditions innumerable, closing with line 112; but in none of the conditions mentioned after line 30

is there a provision for a forfeiture, although some of them are probably as important as the condition concerning the watchman.   Where, then, in the body of the policy does this detached condition regarding the watchman logically belong?   What more ground have we to conclude that it was the intention that it should be located above line 30 than that it should be located after line 30 or than after line 112, which is the last line of the policy?   If it had been regularly incorporated in the policy anywhere after line 30 it could not possibly be construed that it was intended to be one of the things warranted, for the things warranted have been classified and specially mentioned; and under the rule of *expressio unius est exclusio alterius* it would not be construed to be a warranty.   It is a stronger case than if it stood alone for construction, for the presumption is in harmony with the maxim above expressed; if it had been the intention to make it a warranty it would have been mentioned with the other warranties.

Again, the rule is universal that statements contained in the application will not be construed to be warranties if elsewhere in the contract there can be found reason to suppose that such was not the clear understanding of the parties.   Forfeitures are not favored by the law, and constructive warranties which warrant a forfeiture are most strongly construed against the party for whose interest they are inserted in a contract.   This rule is laid down by May on Insurance, and in fact by all other authorities. The court will hold a stipulation, whether contained in the policy or the application, to be a representation rather than a warranty when there is room for doubt or ambiguity of language or otherwise.   It is true there is no ambiguity of language here, so far as the condition to be performed is concerned, but there is ambiguity of arrangement which leads to grave doubts whether it was the intention to make the performance of the condition a condition precedent to

the right of recovery; and whenever such a doubt is raised it must, according to all authority, be resolved in favor of the assured; and the existence of a provision for a forfeiture cannot be established by inference or conjecture.

And this is right and in perfect consonance with the construction of the contract generally. In an ordinary contract no damages can be recovered by reason of a breach, if the breach does not result in damage. In this case, if the rule contended for by appellants should prevail, if the respondents had failed or neglected to keep a watchman for one day, and the mill had not burned for a month afterward, and it positively appeared that the fire was in no way attributable to such neglect or breach, the company could escape its liability by reason of a breach which was entirely immaterial and which in no way contributed to the damage. This would be a hard and unjust condition, and while it may be true that the insurance company would have a right to make a contract to this effect, and, if such contract were made, that it would be the duty of the court to enforce it regardless of its hard conditions; yet, as we have before said, it is the duty of the court to see that such contract has actually been made, and it must be established by clear and convincing testimony. In other words, it must appear from the whole contract, considering both the language and its arrangement, that such was the intention. As is said by 1 May on Insurance, § 164:

"They are not necessarily warranties because they appear on the face of the policy. In order to have the force of a warranty, the statement must indeed constitute a part of the contract; but it by no means follows that every statement which constitutes a part of the contract is therefore a warranty. Whether they are so or not will depend upon the form of expression used, the apparent purpose of the insertion, and sometimes upon the connection or relation to other parts of the instrument."

In *Goddard v. East Texas Fire Ins. Co.*, 67 Tex. 69

(1 S. W. 906), the following clause appeared on a piece of paper different from that on which the policy of insurance to .which it was attached was printed, and was attached by mucilage to a blank space on the face of the policy:

"It is understood and agreed that the assured shall keep a set of books, showing a record of his or their business, including all purchases and sales both for cash and on credit, as well as a copy of his or their last inventory, warranted to be kept in an iron safe at night."

The court in that case said that—

"The place on the policy where the clause was thus posted was in the midst of a sentence on the face of the policy, with which it had no proper connection, and which purported to contain the promises entered into by the insurance company, and not those made by the insured. The existence of the clause was not known to the insured. In a suit upon the policy in which it appeared that the stipulations regarding the iron safe were not observed, there being no evidence of fraud committed by the insured or of resulting injury to the insurer from a failure to keep the safe.   Held—

(1.) "That the clause could at most be regarded as a representation and not as a clause of warrantee.

(2.) "The method of attaching the clause to the policy precluded it from being invested with any higher dignity than a mere representation.

(3.) "Words purporting to be a condition on which a policy is issued must be set forth in such a place and in such a manner in the policy as to leave no doubt that they were so intended, and words inserted promiscuously therein, having no connection with the other conditions of the policy, although the word *condition* is used, will not be treated as a condition of the policy, citing *Kingsley v. New England Mutual Fire Insurance Company*, 8 Cushing 393."

It will thus be seen that the case above cited was identical with the case at bar.   The case of *Au Sable Lumber Co. v. Detroit, etc., Ins. Co.*, 89 Mich. 407 (50 N. W. 870), also sustains the contention of respondents.

The appellant insists that the argument that a party who makes a contract containing a continuing promise to do a particular thing can with impunity violate the promise because the contract does not contain a clause expressly stating that a failure to keep the promise shall render the contract void is too absurd to merit discussion. This would be true if any such an argument were made, but the criticism made by appellant would apply to the breach of any contract. Of course, if a party violates his contract he does it at his peril and is liable for any damages which may flow from it, but the contention of the respondents simply is that he should not be liable for damages which did *not* flow from it. As this is a new question in this state we feel justified, under the authorities, in deciding it in consonance with our views of right, and therefore hold that no error was committed by the court in the instruction complained of, as the instruction placed the burden upon the plaintiff to show that the breach did not contribute to the loss.

Appellant also urges that the court erred in instructing the jury as asked by plaintiff's request No. 1, the error of the court consisting in the use of the word "clear." The court instructed the jury as follows:

"The burden of proof is on the defendant, but before you can so find you should be satisfied by a clear preponderance of proof that he did so burn said buildings."

Had this instruction been all the instruction given to the jury on this subject, there might be some ground for the apprehension of the appellant that the jury would conclude that the court was invoking the rule in a criminal case, that this fact would have to be established beyond a reasonable doubt. Even if we consider that the court had erred in this instruction, the instructions asked for by the defendant, which were given by the court, it seems to us place the question of the sufficiency of the proof in as strong a

light before the jury as the instruction given by the court, which is complained of by the defendant. The seventh instruction asked by the defendant was as follows:

"In order to show fraud, or show a fraudulent act by proof, the proof of the facts and circumstances must be such as will convince the mind of an ordinarily prudent person that the party charged is guilty of such charge; and the facts and circumstances must be such as not to be susceptible of any natural or reasonable explanation consistently with the honesty and integrity of the person charged therewith in respect to the matters in issue."

Instruction number eight asked by the defendant was as follows:

"This is a civil action and it is not required in a civil action to establish the facts beyond a reasonable doubt as in a criminal case, but a fair preponderance of proof is all that is required on the part of the one who attempts to establish any given condition of affairs."

Thus, as we have said above, putting the construction on instruction number eight as qualified by number seven asked by the defendant, there is certainly no room for objections to the instruction actually given by the court. But without considering the action of the defendant and the instructions asked by it, when we take into consideration the whole of the instruction on this point, which was as follows:

"This is a civil action, and it is not required in a civil action to establish the facts beyond a reasonable doubt as in a criminal case, but a fair preponderance of proof is all that is required on the part of one who attempts to establish any given condition of affairs;"

And the further charge that—

"As to the defense that George E. Hart burned or caused to be burned the buildings in question, that the burden of proof is upon the defendants, and that, before you can so find, you should be satisfied by a clear preponderance of the evidence that he burned his buildings or caused them to be burned;"

We think the idea is removed that the jury in any way got the impression that any greater amount of proof should be required than that required in a civil action.   The court had already told them that it was *not* required in a civil action that the facts should be established beyond a reasonable doubt, as in a criminal case; and had also informed them that the burden of proof was upon the defendant. It seems to us that in connection with the instruction given above, the phrase "clear preponderance of the evidence" amounts to nothing more than a preponderance of evidence, or a distinct preponderance of evidence, which would, of course, be necessary to a verdict, as it must be a distinct preponderance before the preponderance can be ascertained.    Construing the instructions together we think the jury was not misled by the instruction.

The claim that errors were committed on the part of the court in the admission of certain testimony we do not think are substantiated by the record.    So far as the further contention is concerned, that the verdict of the jury was contrary to the evidence, we think there was sufficient testimony on all the points controverted, including the question of the watchman, to sustain the verdict.

The judgment will, therefore, be affirmed.

ANDERS and STILES, JJ., concur.

HOYT and SCOTT, JJ., dissent.