No. 2091.

P. A. GODDARD *v.* EAST TEXAS FIRE INSURANCE COMPANY.

1. INSURANCE.—In order to constitute a statement or promise of the insured, a warranty, it must be made a part of the policy, either by appearing in the body of the instrument, or by a proper reference in the policy to some other paper in which it is found. Being in the nature of a condition precedent, it must form part of the contract between the parties.
2. SAME.—When a doubt as to whether such other paper was regarded by the insurer and insured as a part of the policy, the doubt will be resolved by the courts in favor of the insured.
3. SAME.—The following clause appeared on a piece of paper, different from that on which the policy of insurance to which it was attached was printed, and was attached by mucilage to a blank space on the face of the policy: "It is understood and agreed that the assured shall keep a set of books, showing a record of his or their business, including all purchases and sales both for cash and on credit, as well as a copy of his or their last inventory, warranted to be kept in an iron safe at night." The place on the policy where the clause was thus posted, was in the midst of a sentence on the face of the policy, with which it had no proper connection, and which purported to contain the promises entered into by the Insurance Company and not those made by the insured. The existence of the clause was not known to the insured. In a suit upon the policy in which it appeared that the stipulations regarding the iron safe were not observed, there being no evidence of fraud committed by the insured or of resulting injury to the insurer from a failure to keep the safe. *Held:*

(1) The clause could at most be regarded as a representation and not as a clause of warrantee.

(2) The method of attaching the clause to the policy, precluded it from being invested with any higher dignity than a mere representation.

(3) Words purporting to be a condition on which a policy is issued, must be set forth in such a place, and in such a manner in the policy as to leave no doubt that they were so intended, and words inserted promiscuously therein, having no connection with the other conditions of the policy, although the word *condition* is used, will not be treated as a condition of the policy, citing, Kingly v. New England Mutual Fire Insurance Company, 8 Cushing, 393.

(4) When a policy of insurance is in its terms inconsistent, or ambiguous in its provisions, it must be construed most favorably for the assured.

APPEAL from Kaufman. Tried below before the Hon. Anson Rainey.

*Wood & Charlton*, for appellant, on their proposition that the three-fourths loss and iron safe clause being new and unusual and unknown to the plaintiff at date of contract, and defendant having solicited of plaintiff such risk, and having neglected to inform him of existence of such clause, as also of its intention to make same part of the policy, and having prepared and retained possession of such policy until after the fire, ought not to be construed as part of the policy binding on plaintiff, cited: Wood on Fire Insurance, section 88; Franklin Fire Insurance Company v. Hewitt, 3 B. Monroe, Kentucky, 231; Tesson v. Atlantic Mutual Insurance Company, 40 Missouri, 33; Manhattan Insurance Company v. Webster, 59 Pennsylvania State, 227; Pomeroy's Equity Jurisprudence, sections 856, 902 and 905.

*Whitaker & Bonner*, for appellee, on their proposition, that if the clause complained of was a part of the contract, and a warranty on the part of the assured, a breach of said warranty would vitiate the contract and prevent a recovery, whether the same related to the risk or not, or was material or not, and the court did not err in holding that said clause was valid and binding and not contrary to law or public policy, and that plaintiff had violated the same, and therefore could not recover, cited: May on Insurance, section 156, and other authorities there cited; Insurance Company v. Long, 51 Texas, 92; Wood on Insurance, section 58, latter part, and section 59.

WILLIE, CHIEF JUSTICE. It is apparent from the case made by the evidence that the failure of Goddard to keep his books and inventory in an iron safe at night, did not arise from any intention on his part to deprive the insurance company of evidence as to the amount of the stock, tools and machinery he had on hand at the time of the fire. He was wholly ignorant of the existence of any clause in the policy imposing this duty upon him.

It is not made to appear that the company has been damaged in the least by reason of Goddard's default in this respect; for the value of the stock at the time the inventory was made was fully proved, and the amount of the subsequent sales—which were all for cash—could be easily ascertained from the accounts kept in the books, which were preserved and open to the inspection of the company and the court. If there has been neither fraud on the part of Goddard, nor loss to the company by reason

of his non-compliance with the said clause, it can not be said that it was material to the risk, and the policy is not avoided unless the provisions of the clause constituted a warranty. If they did, the law exacts a compliance with their terms according to their true intent and meaning, whether material or not, or whether known to the assured or not, if he had the opportunity, and it was his duty, under the circumstances, to acquaint himself with them. (Ripley v. Ætna Insurance Company, 30 New York, 136; Withwell v. Insurance Company, 49 Maine, 200; May on Insurance, 161; Wood on Insurance, sections 58, 176.)

Treating this as a case where the assured was charged with knowledge that the clause in question was attached to the policy, as it appears in the original sent up for our inspection, the question is, did this constitute it a warranty that the assured would perform the promises contained in the clause or the policy should be void ?

It is a cardinal principle of insurance law that in order to constitute any statement or promise of the insured a warranty it must be made part of the policy, either by appearing in the body of the instrument, or by a proper reference in the policy to some other paper in which it is to be found. (Wood on Insurance, section 176, page 340.)

It is in the nature of a condition precedent, and, as such, must form part of the contract between the parties. (Wood on Insurance, section 58; Farmers Loan, etc., Company v. Snyder, 16 Wendell, 481.)

The policy is the contract, and, if outside papers are to be imported into it, this must be done in so clear a manner as to leave no doubt of the intention of the parties. (Farmers Loan, etc., Company v. Snyder, supra; Insurance Company v. Southard, 8 B. Monroe, 634.)

When there is doubt as to the intention of the parties to treat the paper as part of the policy, the courts give the benefit of the doubt to the assured, and construe the policy liberally in his favor. (Stone v. U. S. Casualty Co., 5 Vroom, 376.) This is in accord with the general rule that the language of the policy being the language of the underwriters, if susceptible of two interpretations, that must be adopted which will sustain the claim of the assured, and give him the indemnity it was his object to secure. (Cropper v. Western Ins. Co., 32 Pa. St., 351.)

The clause which appellee seeks in this case to have construed as part of the policy is not written or printed upon the same pa-

per with the rest of that instrument, nor is it referred to in the policy as forming a part of the contract between the appellant and the insurance company. It is clear, therefore, that its conditions can not be treated as entering into that contract if it is to be considered as a separate and detached paper. But the edge of the paper upon which the clause is printed is made, by means of mucilage, to adhere to a blank space on the face of the policy, and upon this single fact rests the whole claim of the appellee to have the clause considered as one of the warranties and conditions of that instrument. In the case of Bean v. Stupart, Douglass, 11, these words were written on the margin of a marine policy of insurance: "Thirty seamen besides passengers." These words were held by Lord Mansfield to constitute a warranty that the insured ship sailed with that number of seamen, so that the policy would be avoided if a less number of seamen manned the vessel. He gave to the words the same effect as if they had been written in the policy itself. In the subsequent case of Kenyon v. Buthen, reported in a note to Bean v. Stupart, the same principle was announced by the same judge, and the words, "in port twenty-ninth of July, 1776," written transversely on the margin of the policy, were held to constitute a warranty which if not strictly complied with to a day would avoid the policy. In the subsequent case of Pawson v. Bannenlt, Lord Mansfield held that though a written paper be wrapped up in the policy, when it is brought to the underwriters to subscribe, and shown to them at the time, it is not a warranty or to be considered as a part of the policy itself, but only as a representation. He held the same thing in Bize v. Fletcher, in reference to the statements in a piece of paper wafered to the policy at the time the underwriters subscribed it. The statements on the papers in question in these two last cases were similar to those passed upon in Bean v. Stupart and Kenyon v. Buthen. In one case they related to the equipment of the ship in men and guns, and in the other to her condition as to repairs and strength, several particulars of the intended voyage being also mentioned.

Thus a clear distinction is drawn by that eminent judge between statements and promises written in the policy itself, though upon the margin, and those detached from it, or contained in a separate piece of paper and made to adhere to the policy. In the former case they are warranties; in the latter they are at best no more than representations.

These cases are old, but we are not informed that they have ever been overruled. On the contrary they are cited with special approbation by some of the most respectable courts of the United States, and quoted by text writers as expressing the law of the present time. (Ins. Co. v. Southard, 8 B. Mon., 637; Farmers' Loan, etc., Co. v. Snyder, 16 Wend, 492; May on Ins., 162, 163; Wood on Ins., 416, 419.)

These decisions may well be supported by the principles we have already announced. The underwriters prepare the contract to suit themselves. They can exact any lawful conditions they chose to guard against fraud, negligence, want of interest, etc.; but they must do so in a manner not calculated to mislead the parties with whom they deal. They have it in their power to express their meaning in a way not to be misunderstood, or to be capable of any other construction, except that which they must know the assured will give to the language. If they do not embody their warranties in the policy itself, or import them into that instrument by a proper reference to other papers in which they are contained, and the contract is capable of an interpretation which will make them mere representations, they must expect that it will be so construed.

But without attempting to decide that there are no circumstances under which a foreign paper attached to a policy, without any reference to it made in that instrument, may form a condition of the contract and be construed as a warranty, or that this clause might not have been attached to the present policy at such place and in such a manner as to give it that effect, we are clear that the clause under consideration is not so attached to the policy as to give it any higher dignity than that of a mere representation. It is placed after a description of the property insured, and in the midst of the covenants assumed by the underwriters, and makes the policy read thus: "The East Texas Fire Insurance Company of Tyler, Texas, organized January, 1875, in consideration of eighty-four dollars and of the agreement herein contained, does insure Goddard & Corley to the amount of twelve hundred dollars: one thousand dollars on their stock of stoves and hollowware, tin, tinware and tinner's materials, and two hundred dollars on their tools and machines, all while contained in the one story frame shingle roof building and shed adjoining on the east, occupied by assured and situated at No. 200, on Moore avenue, corner of Adelaide street, block No. 77, Terrell, Texas. Three-fourths loss and iron safe clause. It is agreed and understood to

be a condition of this insurance that in case of any loss or damage under this policy this company shall be liable only for three-fourths of said loss, not exceeding the sum herein insured, the other one-fourth to be borne by the assured; and in event of other insurance hereon, this company to be liable only for its proportion of three-fourths of such loss or damage.

"It is understood and agreed that the assured shall keep a set of books, showing a record of his or their business, including all purchases and sales, both for cash and on credit, as well as a copy of his or their last inventory, warranted to be kept in an iron safe at night, against all such immediate or proximate loss or damage by the assured as may occur by fire to the property above specified, but not exceeding the interest of the assured in the property and except as hereinafter provided," etc., setting forth the time the policy is to last, how the damage is to be estimated, the date at which the loss is to be paid, etc.

The policy then concludes by reciting the terms, conditions and warranties upon which it is given. It will be seen that the clause in question is inserted in the midst of a sentence with which it has no proper connection; a sentence which purports to contain the promises made on the part of the insurance company and not those entered into by Goddard & Corley. It is therefore not only out of place, but, taken in connection with its context, is devoid of meaning. Not only so, but the policy expressly names the conditions and terms upon which it is executed, and the warranties which the assured is obligated to make good and perform, yet no warranty or condition of the kind stated in the clause in question is found among them.

Now there are some other principles of insurance law applicable to the state of case made by the policy as we have recited it. The first of these is: "Words purporting to be a condition upon which the policy was issued must be set forth in such a place, and in such manner in the policy, as leaves no doubt they were so intended; and words inserted promiscuously therein, having no connection with other conditions of the policy, although the word *condition* is used, will not be treated as a condition of the policy." Wood on Fire Insurance, sections 59, 60. See also May on Insurance, 170.

This principle is well illustrated by the case of Kingsley v. New England Mutual Fire Insurance Company, 8 Cushman, 393. There the words "on condition that the applicant take all risks from cotton waste," inserted between the statement of the sum insured

on the property and the description of its location, were held not to constitute a condition or warranty. The present case is much stronger than the one cited. There the words were written on the face of the policy; here they are printed on a slip and attached to it. There, though wrongly located, they do not interfere materially with the sense of the sentence in which they are embodied; here they do. There the word condition is expressly used in connection with the clause; here it is not. Moreover, whilst it is used in the preceding sentence fixing the liability of the company at three-fourths the value of the property destroyed, it is omitted in the iron safe clause altogether. This must have been done through design, and the design must have been to prevent the latter clause from being construed as a condition. However this may be, the policy is brought fully within the principle of law just announced, and the clause under decision must be held not to be a warranty.

There is still another rule of law applicable to this policy, which is that, when an instrument of this character is inconsistent or ambiguous in its provisions, it must be construed most favorably for the assured. (Wood on Fire Ins., sec. 59 and notes; Hoffman v. Ætna Ins. Co., 32 N. Y., 405; Ætna Ins. Co. v. Jackson, Ously & Co., 16 B. Mon., 242; May on Ins., 183, 184.) The inconsistencies and ambiguities of this policy have already been made apparent. In the first part it recites certain undertakings assumed by the assured; and then in the latter part, which is held to be the most binding portion of such a contract, it sets forth specifically what are the terms of the policy which are to be considered conditions and warranties. To take the most favorable view for the appellee, the policy leaves it doubtful whether the promises exacted of the assured in the first part of the instrument are to be superadded as warranties to those enumerated in the last part, or whether the latter are to be considered the only warranties, leaving the former to be treated as representations. In such case, as we have seen, the doubt must be resolved in favor of the assured. The makers of the policy could have made their meaning clear by including the iron safe clause in the body of the policy at its proper place; but they have chosen to place it where its meaning and construction is obscured, and they must abide the consequences. We are of opinion that the court below should have held the clause in question to have been no more than a representation, and as it was not pleaded as such by the appellee, and the proof did not show any fraud committed by

the appellant, or injury suffered by the company by reason of its not having been literally fulfilled, judgment should have been rendered for the appellant for the full amount claimed by him; the court having found that three-fourths of the value of the property lost was at least equal to the amount for which it was insured.

For the error of the court below in the matter stated, its judgment will be reversed; and this court, proceeding to render such judgment as should have been rendered below, orders and adjudges that the appellant recover of the appellee the sum of twelve hundred dollars, with interest thereon from November 30, 1885, and all costs of this, and of the lower court.

*Reversed and rendered.*

Opinion delivered November 30, 1886.