GEORGIA HOME INSURANCE CO. V. WILLIAM G. MCKINLEY.

Delivered May 9, 1896.

1. **Fire Insurance Policy Upon Building and Merchandise—Divisibility.**
Where a fire insurance policy covers a storehouse and merchandise contained therein, it is divisible, and the violation of a provision relating only to the merchandise will not bar a recovery for loss of the building and fixtures.

2. **Same—Iron Safe Clause not Warranty, When.**
Where an iron safe clause, requiring the assured to keep his books, invoices and inventories securely locked in a safe at night, is printed on a slip of paper and attached to the margin of an insurance policy, but is not referred to in the body of the policy so as to identify it as a part of the contract of insurance, it is merely a representation and not a warranty. Following Goddard v. Insurance Co., 67 Texas, 69.

ERROR from Hopkins.   Tried below before Hon. E. W. TERHUNE.

*Morgan & Thompson*, for plaintiff in error.

*Templeton & Crosby*, for defendant in error.

FINLEY, ASSOCIATE JUSTICE.—This suit was instituted by Wm. G. McKinley against the Georgia Home Insurance Company upon a fire insurance policy to recover $1300, the amount of the insurance provided

in the policy. The defenses urged were: first, breach of the iron safe clause; second, fraud and false swearing; and third, arson. Trial was had before the court without a jury, resulting in a judgment in favor of plaintiff for the sum of $1275.73. From this judgment the insurance company has prosecuted its writ of error.

There is no statement of facts contained in the record, and the case is asked to be reviewed upon the conclusions of fact and law prepared and filed by the trial judge. The conclusions of the trial court are as follows:

"*Conclusions of fact.*—1. On November 1, 1893, the defendant, an incorporated insurance company, through its agents in Hopkins County, issued its insurance policy upon its printed form, which begins as follows: 'No. 196061. By this policy of insurance the Georgia Home Insurance Company * * * in consideration of $24.05, and the agreements and conditions herein contained, insures W. G. McKinley to the amount of $1300, as per printed form hereto attached and forming part of this policy (here comes a blank space about three inches wide) against all such immediate loss or damage sustained by the assured as may occur by fire to the property above specified, not exceeding the sum insured.' The policy terminated November 1, 1894; following the above is printed stipulations as to the manner by which the loss is to be ascertained, and a provision making the policy due sixty days after proofs of loss are received. Then immediately following come thirty-three lines of printed matter containing conditions not involved in this suit.

"2. There is a printed slip so some 3½ inches wide with its left edge pasted to the left edge pasted to the left side of the policy, immediately below the language 'as per printed form hereto attached and forming part hereof,' which covers the blank space above referred to. This slip contains a description of the property insured and amount of insurance as set out in the petition, and briefly, is as follows:

$450 on merchandise;
$300 on furniture, fixtures and safe;
$50 on awning;
$500 on building;
Total insurance permitted, $2600.

This slip to be attached to and made a part of policy No. 196061 of the Georgia Home Insurance Co. Signed by the agents.

"3. Below and independent of the above slip is a second one, pasted to the policy in the same manner as the first, at the left hand of lines 3 to 10, inclusive, of the conditions; this slip is the three-fourths loss clause, and provides the company shall only be liable for three-fourths of the loss sustained, and in case of other insurance, but for its proportionate share of the three-fourths.

"4. Below and independent of these slips is a third slip pasted to the policy as the others, and pasted at its left hand end to the left edge

of the policy opposite lines 11 to 30 of the conditions of the policy. So far as material, it is as follows: 'The assured hereby covenants and agrees to keep a set of books showing a complete record of business transacted, including all purchases and sales, both for cash and credit, and to take an itemized inventory at least once every year; and further covenants and agrees to keep such books and inventory securely locked in a fire-proof safe at night * * * or in some secure place not exposed to a fire which would destroy the house * * * and in case of loss the assured agrees and covenants to produce such books and inventory, and in case of failure to produce same this policy shall be deemed null and void * * *. Attached to and made a part of policy No. 196061 of the Georgia Home Insurance Co.' Plaintiff never saw this clause, and never knew it was on the policy until after the fire * * *.

"5. The assured also had a policy on the same property in the Palatine Insurance Co., which contained the two-thirds loss clause, and was for amounts as follows:

> $500 on house;
> $275 on merchandise;
> $300 on furniture, fixtures and safe;
> $25 on awnings.

"6. On the night of August 23, 1894, the entire property which then belonged to plaintiff, without fault on plaintiff's part, was wholly destroyed by fire; the cash value of the property destroyed being as follows:

> The house worth.................. $1300.00
> The merchandise worth............ 1000.00
> The furniture, fixtures and safe worth   686.40
> The awnings worth ............... 72.50

Proofs of loss as required by the policy were duly made out by plaintiff and delivered to the company on October 2, 1894.

"8. About January 1, 1893, plaintiff took an itemized inventory of the entire stock of goods he had, which complied with the terms of the policy. He kept this in a fire proof safe in the store house, and it was there at the time of the fire. He also kept an invoice book in which he kept most of the invoices of his purchases, which he also had in the safe at the time of the fire. He also kept a book in which he kept a correct account of his cash sales and on which he charged his credit sales. This book was also in the safe when the fire occurred.

"9. All the books were presented and turned over to the defendant for examination after the fire. The invoice book did not contain all the invoices of purchases, and plaintiff wrote to the house with which he dealt and secured duplicate invoices, and by this means could ascertain correctly all his purchases. He produced these books and invoices at the trial. There were several errors in the ledgers. He had no book-

keeper and did not understand book-keeping, and his clerks made the entries. The account of cash sales was correct, but in other accounts there were some errors. He charged his employes with things they took from the store, and made a general charge without specifying whether it was merchandise or cash. He had no account against himself for the liquors he drank or treated out, nor for the cigars he smoked. He used a good deal of whiskey and smoked a good many cigars. His employes' accounts amounted to several hundred dollars, most of which was money advanced to them, and the books did not show which was cash and which merchandise. The books were not incorrectly kept purposely, and plaintiff intended no fraud or wrong, but from them it is impossible to ascertain anything but an approximately correct statement of the sales, not nearer than 10 or 15 per cent. The loss on the property under the policy sued on is as follows:

| | |
|---|---|
| On house | $500.00 |
| On furniture, etc | 257.40 |
| On merchandise | 450.00 |
| On awnings | 36.25" |

"*Conclusions of law.*—1. The iron safe clause is not a warranty. The language of the policy is, 'as per printed form hereto attached.' Following this are three printed forms, the first being the description of the property insured and its insurance; the third printed form is the iron safe clause. Under the rules of construction, well established in this State, it is but a representation and not a warranty.

"2. Plaintiff is entitled to recover as follows:

| | |
|---|---|
| On house | $500.00 |
| On furniture, etc | 257.40 |
| On merchandise | 450.00 |
| On awnings | 36.25 |

with interest on each sum at six per cent from December 1, 1894."

The vital questions involved are: (1) Was the iron safe clause such a part of the contract of insurance as justified its being treated as a warranty? (2) Was the policy divisible, so as to permit a recovery of the insurance therein provided for other than that upon the stock of merchandise?

If the first issue above stated be decided in the negative, then it becomes unnecessary to pass upon the second issue, as no division of the policy would then be required. We may, however, say upon the second issue, that even though the insurance policy upon the stock of goods should be held void by reason of the failure of plaintiff to comply with the stipulations therein which could, in the nature of things, relate only to the stock of goods and not to the other subjects of insurance, that the contract should be treated as divisible, and a recovery be allowed

for the house, fixtures, etc. Bills v. Insurance Co., 87 Texas, 547; Insurance Co. v. Schmidt, 30 S. W. Rep., 833;. Landman v. Insurance Co., 19 L. J., 572; Merrill v. Insurance Co., 73 N. Y., 453; Insurance Co. v. Lawrence, 4 Metc. (Ky.), 9; Coleman v. Insurance Co., 30 N. E. Rep., 279; Insurance Co. v. Scrick, 27 Neb. 527; Querrin v. Insurance Co., 10 W. Va., 529.

The other issue, as to whether the iron safe clause should be treated as a warranty in this case, seems to be fully covered by the case of Goddard v. Insurance Co., 67 Texas, 69. In that case the iron safe clause was contained upon a slip of paper attached to the policy, and was not referred to in the body of the policy so as to identify it as a part of the contract of insurance; and the court held that under such conditions the iron safe clause should not be considered as a warranty. That if treated as a part of the contract at all, it must be regarded merely as a representation, and not as a warranty. In the present case the iron safe clause is attached to the policy in the same manner, and the trial judge has found in effect that it was not referred to in the body of the policy in such a manner as to identify it as a part of the policy. It is one of three slips attached to the policy, and while a reference is made in the body of the policy to the printed form attached to the policy, it does not identify the iron safe clause as distinguished from the other two slips attached in the same manner and containing other and entirely different stipulations.

The conclusions of fact filed by the trial judge are not attacked by the company on this appeal. Its fight is directed at the conclusions of law based upon the facts found by the trial judge. In this condition of the record, we must indulge every inference favorable to the correctness of the conclusions of the trial court; and we cannot say, in the light of the Goddard case (supra) that the trial court has pronounced unsound legal conclusions upon the facts found by him to be true. If this were a question of first impression, we might with propriety discuss the question whether the facts stated in the findings of the court below showed that the iron safe clause was a part of the express contract, and by reason of the terms of the contract should be treated as a warranty. The opinion in the Goddard case, however, is a deliberate, detailed and elaborate discussion of a similar state of facts, by Chief Justice Willie, in which the conclusion is reached that the iron safe clause is not a warranty and, so far as we are aware, that decision has never been overruled, or criticised by our Supreme Court. We feel it our duty to follow this decision, and under that authority, the judgment of the court below in this case is affirmed.

Delivered May 9, 1896. *Affirmed.*