## MISSOURI STATE LIFE INS. CO. v. HEARNE.  (No. 7887.)

(Court of Civil Appeals of Texas. Galveston. Nov. 27, 1920. Rehearing Denied Dec. 22, 1920.)

1. **Insurance ☞365(1)—Application for reinstatement and note executed contemporaneously constituted contract.**

An application for reinstatement after lapse of policy and a note executed contemporaneously together constituted the contract of reinstatement.

2. **Insurance ☞146(3)—Ambiguities In reinstatement contract resolved against insurer.**

Where an application for reinstatement and a note executed contemporaneously constituted a contract for reinstatement, and both instruments were prepared by insurer, inconsistent clauses, as well as all doubts or ambiguities arising upon the face of the contract, must be resolved against the insurer.

3. **Insurance ☞365(1) — Agreement in reinstatement contract concerning suicide held restricted by clause therein.**

A clause in a note given upon reinstatement, that upon payment of the note "all rights under said policy shall thereupon be the same as if said premium had been paid when due," will not give way to a clause in the application for reinstatement providing that, in case of insured's death by suicide within one year, the company would be liable only for the reserve on the policy; the two clauses being inconsistent, and both instruments being prepared by the insurer.

4. **Insurance ☞146(3)—Interpretation sustaining claim of insured adopted.**

The language of a policy of insurance being the language of the underwriters, if susceptible of two interpretations that must be adopted which will sustain the claim of the insured and give him the indemnity it was his object to secure.

5. **Insurance ☞365(2)—Healthy insured held entitled to reinstatement as matter of right; "insurability."**

Under a life policy providing that, if premium is not paid on date when due, insurer will reinstate the policy as of said due date at any time thereafter upon "evidence of insurability satisfactory to the company, and payment of all arrears," etc., an insured who was admittedly in excellent health was entitled to reinstatement as a matter of right; the word "insurability," when used in life policies, being no more comprehensive than that of good health and an insurable interest, such being its ordinary and plain meaning and the popular sense in which it is understood.

6. **Contracts ☞75(2)—Suicide clause in reinstatement contract held without consideration.**

A clause reinstating insured, who was in good health, to the effect that insurer would not be liable for more than the reserve of the policy if the insured should commit suicide within a year, was void for want of consideration,

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

where the policy provided that the company would reinstate the policy at any time upon evidence of "insurability satisfactory to the company and payment of all arrears"; such reinstatement being no more than the performance of insurer's legal obligation.

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Suit by Madge W. Hearne against the Missouri State Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Locke & Locke, of Dallas, for appellant.

Gill, Jones, Tyler & Potter, of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee to recover upon a life insurance policy issued to Roy W. Hearne, her deceased husband, for her benefit by appellant.

The company defended upon the ground that, said policy having lapsed, it was reinstated with a condition forming a part of the reinstatement contract that, if the insured should die by self-destruction, sane or insane, within one year from the company's approval of his application for reinstatement, the amount payable as a death benefit should be only the reserve on the policy, and that the insured did so die within one year, and that the defendant had tendered payment of the amount due. To this the plaintiff replied that, for a number of reasons urged by her, said condition was not valid and binding upon her.

The case was tried before a jury, but the court submitted to the jury only an issue as to the amount of a reasonable attorney's fee. Uncontroverted findings were made by the court that the insured died by suicide within a year from the date of the company's approval of his application for reinstatement.

It was undisputed that at the time of the death of assured, in January, 1917, the policy was in force, with all premiums paid thereon up to July 24, 1917, and that the plaintiff was entitled to recover under the terms of the original policy, unless the terms of the policy had been changed by the additional agreement alleged to have been made as a condition to the reinstatement of the policy, which was alleged to have lapsed by reason of assured's failure to pay a note given for a part of the 1915 premium.

Upon a return of a verdict by the jury fixing the sum of $5,000 as reasonable attorney's fees, judgment was rendered in favor of the appellee for the amount stated in the policy, with interest, attorney's fees, and statutory damages, aggregating the sum of $30,985, less the amount of a loan on the policy made by the company to Hearne a few months before his death.

The grounds upon which appellee insists that the suicide provision in the contract of reinstatement pleaded by the appellant constitutes no part of the contract of insurance, and is not binding upon appellee, all of which were properly pleaded in the court below, are:

"(1) Because no such agreement was ever made between the assured and the insurance company.

"(2) Because, if such agreement was made, it was obtained by misrepresentation, fraud, and duress on the part of the company in securing the alleged forfeiture or lapse of the policy and consequent application for reinstatement.

"(3) Because there was no consideration for this additional agreement, the assured at that time having a contract right to the reinstatement of the policy without additional exceptions being ingrafted thereon.

"(4) Because, if such contract was made, it was superseded by a subsequent contract between the parties whereby they contracted, for a valuable consideration, that the policy be restored under its original terms and conditions, the same as if no lapse had ever occurred.

"(5) Because, if said agreement was lawfully made and supported by a consideration, it was waived and became no part of the contract of insurance, because not attached to the policy and made a part thereof as required by law.

"(6) Because, even if incorporated in the policy, this suicide clause was rendered nugatory by the provision in the policy making it incontestable after August 3, 1910."

The policy sued on was issued on August 3, 1909, and requires the payment of yearly premiums of $767, and contains a provision making it incontestable after August 3, 1910. It also contains the following provisions:

"Premiums may be paid annually, semiannually, or quarterly, in advance, in accordance with the company's table of rates applicable hereto, and the company will allow a change from one to another of such modes of payment upon the insured's written request therefor on the company's form.

"All premiums are payable in advance, either at the home office of the company in St. Louis, Missouri, or to an agent of the company, upon delivery of a receipt signed by the president or secretary and countersigned by the authorized agent. If any premium is not paid on the date when due, this policy shall cease and determine except as hereinafter provided.

"If any premium after the first is not paid on the date when due the insurance will continue in force from such due date for the term of one month, which is the period of grace allowed hereunder, without interest charge, in the payment of any such premium; and after the second policy year, if a premium is not paid within the period of grace, insurance will automatically continue as term insurance for the face amount hereof for a further term, the total term of continued insurance, including the period of grace, granted at completion of any policy year, being specified in the table below. In lieu of such automatic insurance, upon the insured's written request and legal surrender of this policy within one month from said due date, either a paid-up life policy will be issued, or the cash value of this policy paid,

the amount of which, at the completion of any policy year, is specified in the table below." (A table showing the amount of the paid-up policy, the amount of the cash value, and the terms of continued insurance available at the end of each policy year was given.)

"If any premium is not paid on the date when due, or within the period of grace, and this policy had not been surrendered, the company will reinstate the policy as of said due date at any time thereafter, upon evidence of insurability satisfactory to the company and payment of all arrears of premiums, with interest, together with the payment, or reinstatement, of any indebtedness on this policy on said due date, with interest.

"The Missouri State Life Insurance Company agrees to pay twenty-five thousand dollars immediately upon receipt of proof of the death of Roy W. Hearne, the insured, to Madge W. Hearne, wife of the insured and beneficiary, it being understood that the insured may change the beneficiary or beneficiaries as hereinafter provided.

"The insured may, at any time during the continuance of this policy, with the consent of the company, provided the policy is not then assigned, change the beneficiary or beneficiaries herein by filing at the home office a written request on the company's form therefor, duly acknowledged, accompanied by this policy, such change to take effect upon the indorsement of the same on the policy by the company. If any beneficiary shall die before the insured, the interest of such beneficiary shall vest in the insured.

"This policy is issued with the express understanding that the insured may, without the consent of the beneficiary, receive every benefit, exercise every right, and enjoy every privilege conferred on the insured by this policy."

When the premium of $767, due July 24, 1915, matured, it was settled by the payment of $127 in cash, and the giving of a note for $640 due November 24, 1915. Said note contained a provision reading as below quoted, and the receipt given therefor contained a provision in substantially the same words, to wit:

"This note, together with one hundred twenty-seven and no/100 dollars in cash, is tendered to said company by the maker upon the understanding and agreement that it shall not be binding upon the maker until it is accepted by the president or secretary of said company, and if and when accepted such acceptance shall be upon the following agreement, to wit, that although no part of the * * * annual premium due on the 24th day of July, 1915, on policy No. 41131, has been paid, the insurance under said policy shall, subject to any indebtedness thereon, be continued in force until midnight of the due date of this note; that, if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that, if this note is not paid on or before the day it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said

company shall retain said cash as part compensation for the rights and privileges hereby granted, and as the earned premium for the insurance granted from the maturity of said premium to the maturity of this note, and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made."

When said note matured November 24, 1915, it was not paid in cash, but was settled by the payment of an additional sum of $40 in cash, the giving of a new note of $600 due February 24, 1916, and the payment of interest on the maturing note amounting to $12.80.

This note and the receipt issued by the company contained provisions identical with those contained in the previous note and receipt, except as to dates and amounts.

On January 26, 1916, the company sent to its agent, Leek, at San Antonio, for collection, the note of $600, maturing February 24, 1916. On the same day it mailed to the insured at his address, 211 Jefferson avenue, Dallas, Tex., given upon the note itself, a notice of the approaching maturity of the note. This notice was sent in an envelope which bore a return request card, and the postage was prepaid. The envelope never was returned by the post office to the company. The notice informed Mr. Hearne that the note of $600, with interest at 6 per cent. from November 24, 1915, would be due February 24, 1916, and was payable at the company's home office in St. Louis, but might be paid to agent Leek at 440 Moore Building, San Antonio.

The plaintiff pleaded that the company did not give to the insured, in accordance with its custom, notice of the approaching maturity of this note, and pleaded that, when notified by the company that the note was past due and unpaid, the insured wrote to the company that he had not received notice of the note being due.

The insured did write such a letter, but the court ruled that the statement therein contained, that no notice of the approaching maturity of the note had been received, was not evidence of the truth of such statement. There was no other evidence on this subject, either received or offered.

When this note was returned on March 12, 1916, by the company's general agent unpaid, he advised the company that he knew Mr. Hearne would want to reinstate the policy, and on March 23, 1916, the company wrote Mr. Hearne that he had doubtless permitted the policy to lapse by oversight, and they would be glad to offer him every assistance in taking care of the premium, and that upon receipt of application the company would be pleased to take action upon the reinstatement of the policy.

On receipt of this letter Hearne wrote the company, on March 25th, inclosing check for $112, and requesting an extension of 90 days on the remainder of the premium ($600). In

reply the company wrote Hearne, March 31st, as follows:

"Dear Sir: We acknowledge receipt of your favor of March 25th, 1916, wherein you inclose us your check for $112.00, to be applied toward payment of youn premium note for $600.00, due February 24th, 1916, in connecttion with the above numbered policy.

"Our note extension agreement to cover the balance of the premium is inclosed herein, which we will ask you to sign and return to us, together with the inclosed application for reinstatement, in proper order, for the consideration of our medical department.

"For your convenience in returning the inclosed papers in proper order, we are inclosing herewith our self-addressed stamped envelope.

"Yours very truly,

"F. H. Morgan, Assistant Secretary."

The application for reinstatement and the note extension contract which accompanied this letter, and which were executed and returned to the company by Hearne, read as follows:

"Application for Reinstatement of Policy.

"Whereas, policy No. 41131, on my life in the Missouri State Life Insurance Company, ceased and determined by reason of the nonpayment of a premium note due on 24th day of February, 1916, I hereby make application for the reinstatement of said policy, and warrant as follows:

"That since the day of my examination for the above numbered policy I have had no sickness or ailment whatever, except as follows: *None;* nor have I suffered any injury of any kind, except as follows: *None;* and that I have not consulted any physician, nor been attended, nor prescribed for, by any physician, except as follows: *Have been in perfect health and am in perfect health now.*

"I further warrant and declare that I am willing to employ a legally qualified physician when I am ill; that I am of sound constitution, temperate habits, and in good health; that my occupation *is farm implement dealer,* and my age nearest birthday 41 years; that since the date of issue of above-numbered policy there has been no change in my family record except as follows: *None;* nor have I made application for insurance on my life to any company or association upon which a policy has not been issued as applied for, except as follows: *Union Central Life, Sept., 1914, declined application for $25,000 for reason that I was then in serious financial difficulties, which have since been relieved;* nor have I been declined for reinstatement by any company or association, except as follows: *No;* nor have I decided or have any present intention to make any change temporary or permanent in my occupation nor in my place of residence, except as follows: *No;* nor have I decided to make a journey out of the United States of America, except as follows: *No.*

"I hereby ratify and confirm all of the statements made in the application upon which said policy was issued, except such as are modified by warranties herein contained, and hereby make the said application and this application for reinstatement alike parts of the said contract of insurance, and agree that in event of my death by self-destruction, sane or insane, within one year from the date of approval by the company of this application for reinstatement, the amount payable as a death benefit shall be the reserve on the policy and no more.

"I further agree that said policy shall not be revived until this application shall be approved in writing by the president, secretary, or medical director of the company, and I shall have received notice in writing of such approval, signed by the president or secretary of the company; and that, if any of the statements or warranties contained herein shall prove to be incomplete and untrue, then the reinstatement shall be ipso facto null and void."

"Policy No. 41131, 6 per cent. interest to 3—24—16, included in $291.80, St. Louis, Mo., March 29, 1916.

"May 24, 1916, without grace, after date, for value received, I promise to pay to the order of the Missouri State Life Insurance Company at its home office, 4th Floor Chemical Bldg., St. Louis, Mo., five hundred dollars, with interest at the rate of six per cent. per annum from March 24, 1916.

"This note, together with two hundred ninety-one and $80/100$ dollars in cash, is tendered to said company by the maker upon the understanding and agreement that it shall not be binding upon the maker until it is accepted by the president or secretary of said company, and if and when accepted such acceptance shall be upon the following agreement, to wit:

"That although no part of the ———— annual premium due on the 24th day of July, 1915, on policy No. 41131, has been paid, the insurance under said policy shall, subject to any indebtedness thereon, be continued in force until midnight of the due date of this note; that, if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that, if this note is not paid on or before the day it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said company shall retain said cash as part compensation for the rights and privileges hereby granted, and as the earned premium for the insurance granted from the maturity of said premium to the maturity of this note, and all rights under the said policy shall be the same as if said cash had not been paid r .r this agreement made.

"[Signed]  R. W. Hearne,

"$500.00.           Kingman Building,

"Dallas, Texas."

Upon receipt and inspection of the application and note, the company wrote Hearne, on May 17, 1916, as follows:

"Dear Sir: We take pleasure in advising you that your recent application for reinstatement of policy No. 41131 on your life which lapsed for nonpayment of the note due February 24, 1916, has been approved, and that the policy has been placed in full force and effect in accordance with its original terms and conditions.

"We beg to advise you that your note for $500, dated March 29, 1916, and due May 24, 1916, without grace, which you tendered to this company to secure an extension in the time

allowed for settlement of the annual premium due July 24, 1916 [clerical error—should be 1915], on your policy, has been accepted subject to its conditions and in accordance with the terms of said policy.

"Your note for $600, due February 24, 1916, is inclosed herewith, properly canceled, together with a receipt for the part premium payment that you made in connection with the note due May 24, 1916.

"We wish at this time to state that the Missouri State Life Insurance Company is always ready and anxious to accommodate and assist its policy holders in every possible manner, and if at any time it is inconvenient for you to make settlement of a premium, you should communicate with the company before the expiration of the regular grace period, in order that some arrangement may be made to prevent the policy lapsing.

"Assuring you of our appreciation of your patronage, and of our desire to serve you, we beg to remain,

"Yours very truly,
"F. H. Morgan, Assistant Secretary."

Receipt inclosed in said letter read as follows:

"St. Louis, Mo., May 17, 1916.

"Received from Roy W. Hearne, 211 Jefferson Ave., Dallas, Texas, $291.80 in cash, which includes also $179.80 previously paid, and a note for $500.00, dated the 29th day of March, 1916, due on or before May 24, 1916, after its date, without grace, payable at its Home Office, St. Louis, Mo.

"Said note is received by the Missouri State Life Insurance Company at the request of the maker, and is held by said company, together with said cash, on the following express agreement:

"That although no part of the ——— annual premium due on the 24th day of July, 1916, on policy No. 41131, issued by said company on the life of R. W. Hearne, has been paid, the insurance thereunder shall be continued in force until midnight of the due date of said note; that, if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that, if this note is not paid on or before the day it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said company shall retain said cash as part compensation for the rights and privileges hereby granted, and as the earned premium for the insurance granted from the maturity of said premium to the maturity of said note, and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made.

"[Signed] T. F. Lawrence, Secy."

The company's secretary testified that "1916" above was a clerical error, and "1915" was intended.

When this note became due a part of it was paid in cash, and a new note executed for the balance, containing the same provisions as the previous premium note. This balance was subsequently paid in full by Hearne, and he also paid yearly premium due July 24, 1916, and thereafter borrowed upon the policy $4,225, which amount he owed the company at the time of his death.

Under appropriate assignments of error appellant contends that the provision in the application for reinstatement that, in event of the death of the insured by self-destruction, sane or insane, within one year from the date of the approval of the application by the company, the amount payable as death benefit should be the reserve on the policy, and no more, became, when the application was accepted by the company, a valid and binding contract between the parties, and therefore the trial court erred in rendering judgment for any sum in excess of the reserve on the policy, less the loan due thereon by the insured, which the undisputed evidence shows was $107.64.

The questions raised by the assignments have been exhaustively and ably presented in briefs and oral argument of counsel representing the respective parties.

We shall not discuss all of the issues raised, but will content ourselves with a statement of our conclusions upon what we regard as the most material questions presented.

While not wholly free from doubt of its correctness, we have reached the conclusion that the judgment of the trial court should be affirmed for at least two of the reasons urged by the appellee.

[1, 2] The application was only a part of the contract for reinstatement, it and the note executed contemporaneously together constituted the contract. Both of these instruments were prepared by appellant, and inconsistent clauses, as well as all doubts or ambiguities arising upon the face of the contract, must be resolved against the appellant. Goddard v. Insurance Co., 67 Tex. 69, 1 S. W. 906, 60 Am. Rep. 1; Bills v. Hibernia Ins. Co., 87 Tex. 547, 29 S. W. 1063, 29 L. R. A. 706, 47 Am. St. Rep. 121; Indiana Co. v. Keiningham, 161 S. W. 384; National Ins. Co. v. Silverberg, 177 Mo. 205, 176 S. W. 97; L. L. & G. Co. v. Davis, 37 Tex. Civ. App. 348, 84 S. W. 260; International Travellers v. Votaw, 197 S. W. 237.

[3] The clause in the printed application providing that, in case of insured's death by suicide within one year, the company would be liable only for the reserve on the policy, is wholly inconsistent with the following provision in the note, which purports to state the agreements under which the application and note are approved and accepted:

"That, if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due."

The original contract of insurance provides for a death benefit of $25,000, and was incontestable after one year. The insured had paid for this indemnity for six years at the yearly premium rate of $767, and by the express terms of the note, which was a part of the reinstatement contract, upon payment of the note "all rights under said policy shall thereupon be the same as if said premium had been paid when due." We do not think that this express agreement in the contract of reinstatement written by appellant should give way to a clause in another part of the contract written by the appellant which places a very material limitation upon the rights of the insured under the policy.

[4] In the case of Goddard v. Insurance Co., 67 Tex. 71, 1 S. W. 906, 60 Am. Rep. 1, our Supreme Court, after announcing the well-settled general rule "that the language of the policy being the language of the underwriters, if susceptible of two interpretations that must be adopted which will sustain the claim of the assured, and give him the indemnity it was his object to secure," says:

"These decisions may well be supported by the principles we have already announced. The underwriters prepare the contract to suit themselves. They can exact any lawful conditions they choose to guard against fraud, negligence, want of interest, etc., but they must do so in a manner not calculated to mislead the parties with whom they deal. They have it in their power to express their meaning in a way not to be misunderstood, or to be capable of any other construction, except that which they must know the assured will give to the language. If they do not embody their warranties in the policy itself, or import them into that instrument by a proper reference to other papers in which they are contained, and the contract is capable of an interpretation which will make them mere representations, they must expect that it will be so construed."

In the case of Indiana Co. v. Keiningham, 161 S. W. 384, 386, the opinion is in part as follows:

"The application is thus made as much a part of the policy as if its very terms were written into the body of the policy. That being true, then we have one provision of the policy which provides that, in order to collect the insurance in case of a loss, the horse must be in Ellis county at the time of its death, and another provision that has no restriction whatever relating to the location of the horse.

"In case of conflicting or inconsistent provisions in policies of insurance, it is said in Bills v. Hibernia Insurance Co., 87 Tex. 547, 29 S. W. 1063, 29 L. R. A. 706, 47 Am. St. Rep. 121, that every doubt arising thereon must be resolved against the insurer. To the same effect is Goddard v. East Texas Fire Ins. Co., 67 Tex. 69, 1 S. W. 906, 60 Am. Rep. 1: 'The application was a part of the contract, and, if the appellee stated therein that he applied for insurance upon certain conditions * * * in direct conflict with the conditions of the policy issued under and pursuant to the application, it must be assumed that such conditions in the policy were waived by the company when it issued the policy.' Phenix Ins. Co. v. Lorenz, 7 Ind. App. 266, 33 N. E. 444, 34 N. E. 495. See, also, McElroy v. British American Assurance Co., etc., 94 Fed. 990, 36 C. C. A. 615, and many cases there cited.

"Hence, and in accordance with the views above expressed and the authorities cited, we hold that defendant in error was excused from reading his policy; that the acceptance of his application without notice by plaintiff in error of its intention to issue a policy of insurance varying the terms of the application was a waiver of the provision restricting the location of the horse, and that in any event that clause, being in conflict with another portion of the policy, must give way to the other if thereby a forfeiture of the policy can be avoided."

It seems to us that the principles announced in these decisions are controlling in this case. There can be no doubt that the application and note together evidenced the contract of reinstatement, and, being contemporaneously executed, must be regarded as one contract. It is clear that the two provisions above quoted are inconsistent and contradictory of each other, the language of both having been selected by the appellant. Such being the facts, we think, under the decisions above cited, the conflict should be settled by accepting that provision which will prevent a forfeiture, and ignoring the conflicting provision.

The appellant in its letter notifying the insured that his application for reinstatement was accepted and in several renewals of a portion of the amount of the original reinstatement note repeatedly states the contract for reinstatement as stated in the original note, "that if the note is paid all rights under the policy shall be the same as if the premium had been paid when due." Unless we can attribute to appellant an intention to deceive and mislead the insured, this must have been its interpretation of the contract.

[5, 6] We are also of opinion that appellee's contention, that if the suicide clause in the application for reinstatement should be regarded as a part of the contract this provision is void for want of consideration, is sound. The policy contains this provision:

"If any premium is not paid on the date when due or within the period of grace, and this policy has not been surrendered, the company will reinstate the policy as of said due date at any time thereafter upon evidence of insurability satisfactory to the company, and payment of all arrears of premiums, with interest, together with the payment or reinstatement of any indebtedness on this policy on said due date with interest."

The application for reinstatement required Hearne to answer a number of questions affecting his health and physical condition since the issuance of the policy and at the time the application was made. His answers to these questions which he was requested to

make for the consideration of appellant's medical department were full and explicit, and show him to have been in perfect health, and never to have suffered from any accident or serious sickness. There was no question raised as to the truth of these answers. On the contrary, witnesses for appellant testified that he was in perfect health, and there is nothing in the evidence which suggests that appellant was not entirely satisfied with his health condition, or that it could have lawfully refused reinstatement because of any possible doubt as to the condition of the applicant's health. Leonard v. Prudential Ins. Co., 128 Wis. 348, 107 N. W. 646, 116 Am. St. Rep. 50; Prudential v. Union Trust Co., 56 Ind. App. 418, 105 N. E. 505; Dennis v. Association, 120 N. Y. 496, 24 N. E. 843, 9 L. R. A. 189, 17 Am. St. Rep. 660; Joyce on Insurance (2d Ed.) vol. —, art. 3206; Elliott on Contracts, vol. 5, art. 4382.

Upon this state of facts, unless the word "insurability" as used in the provision of the policy above quoted means more than good health and an insurable interest, appellant was bound under said provision to reinstate Hearne, and, being so bound, his reinstatement constituted no consideration for the suicide clause.

In Elliott on Contracts (last supplement) vol. 8, § 215, the rule is stated as follows:

"It is well settled that merely promising to do or doing what one is already legally bound to do is no consideration for another promise, and this doctrine is applied to a variety of cases" (citing a number of authorities and giving a number of illustrations in the foot-note).

This doctrine has been expressly recognized in Texas in a number of decisions, for example: Boerger v. Vandegrift, 188 S. W. 948; Whitsett v. Carney, 124 S. W. 443; Bonzer v. Garrett, 162 S. W. 934; Consumers Co. v. Badt & Co., 157 S. W. 226. Hence if the insured had a contract right to the reinstatement of his policy by complying with certain conditions, and he did comply therewith, any additional agreement wrested from him as the price of the reinstatement is a mere nudum pactum.

It may be that the word "insurability," as applied to life insurance as understood by insurance companies, has a meaning more comprehensive than that of good health and an insurable interest; but such is not its ordinary and plain meaning and the popular sense in which it is understood, and when used in an insurance contract it must be given its plain and ordinary meaning. Life Ins. Co. v. Smith, 41 S. W. 680; Bryant v. Continental Co., 107 Tex. 582, 182 S. W. 674, L. R. A. 1916E, 945, Ann. Cas. 1918A, 517; Ford v. Life Ins. Co., 103 Tex. 522, 131 S. W. 406.

The only case cited in the briefs in which the exact question has been passed upon by the courts is the case of Sussex v. Ætna Life Ins. Co., decided by the Supreme Court of Ontario (38 Ontario Law Reports, 365). The company in that case claimed that, because the insured had entered the army he was no longer insurable at the rate provided in his policy, and hence that he was unable to furnish "evidence of insurability satisfactory to the company." The opinion of the Supreme Court is as follows:

"Meredith, C. J. O.: Mr. White has argued this case with his usual ability and fairness, and we think that nothing would be gained by further consideration of it. The sole question is as to the meaning of clause 14 of the policy. It provides that: 'Within five years after default in payment of premium, unless a cash surrender value has been paid for the policy or the extension period has expired, or if the policy has not been surrendered, it may be reinstated upon evidence of insurability satisfactory to the company, and by payment of arrears of premiums with interest at the rate of six per cent. per annum, and by reinstatement of whatever indebtedness to the company existed hereon at the date of default, with interest from that date.'

"The insured failed to make payment of the premium of 1916 upon the due date or within the thirty-one days of grace that were allowed, but upon the 26th of April he furnished the appellants with proof that he was in good health, to which proof they made no objection. As Mr. White has told us, he tendered the amount of the premium, and there was no indebtedness upon the policy, and, unless something more is required by the clause, the case is brought within it.

"Now, Mr. White argues that it would be unreasonable that a man who had been insured for only two years should be in a better position than a man who had been insured for three years, and was entitled to certain benefits under an earlier provision of the policy. That argument does not at all impress me; the language of the clause, apart from any obscurity as to the meaning of the word 'insurability,' is in plain English.

"What does 'insurability' mean? Mr. White conceded—at all events it is the case—that in any contract of this kind the language used is to be taken most strongly against the insurer. Now, the argument is that 'insurability' means not only that the insured must have an interest in the life, and that the life is a good life, but also that he shall show that it is one that should be insured by the company at the rate at which the policy was effected. That seems to me to read into this condition something that is not there.

"The provision is that the policy is to be reinstated. What would be done, according to Mr. White's statement, would be to issue an entirely new policy, insuring the respondent at a different and higher rate. If that is what was intended to be provided, the intention should have been clearly expressed. Not only has that not been done, but it seems to us that the clause is susceptible only of the interpretation which the trial judge has put upon it, and that all that was required to entitle the respondent to have his policy reinstated was to pay or tender the overdue premium, with interest, and furnish proof that he had an insurable interest in his life and was in good

health; and that he has done. The appeal fails, and must be dismissed, with costs."

The word "insurability" does not include in its meaning "desirability," and when the applicant for reinstatement complies with the other requirements of his policy, and shows himself to be in perfect health, the company, under a contract like the one in this case, is bound to reinstate the policy, and any additional promise or warranty required of the applicant to obtain his reinstatement is void for want of consideration.

These conclusions require that the judgment of the court below be affirmed, and render unnecessary a discussion of the other questions presented.

For the reasons stated the judgment of the court below is affirmed.

Affirmed.