## THOMAS INV. CO. v. THOMPSON.
### No. 2479.

Court of Civil Appeals of Texas. El Paso.
Nov. 13, 1930.

Thomas & Coffee, of Big Spring, for appellant.

Sullivan & Sullivan, of Big Spring, for appellee.

PELPHREY, C. J.

Appellee, Babe Thompson, brought this suit in the district court of Howard county against appellant, Thomas Investment Company, as attorney in fact for Underwriters of Insurance under the Lloyd's Plan. For the purposes of this opinion, the parties will be designated as in the trial court.

Plaintiff alleged the issuance and a delivery to him of an insurance policy (which policy was attached to and made a part of his petition) by defendant; that the policy insured him against loss or damage of whatsoever kind and character, nature, or extent, resulting directly or indirectly by theft, robbery, and pilferage to a certain 1928 model Oldsmobile sedan; that on or about April 9, 1929, one Billie Campbell stole the aforesaid automobile, and, after driving same out of Howard county and over various parts of West Texas, abandoned same at Wink, Tex., where it was recovered by plaintiff; and that the car was damaged in an amount greater than $600, the amount of the policy.

Defendant answered by general demurrer, special exceptions, and a general denial.

The cause was tried to a jury, and in response to special issues the jury found:

1. That Billie Campbell was guilty of theft by bailee of the car in question.

2. That plaintiff gave defendant proper notice of his damage.

3. That the fair market value of the car on April 9, 1929, and prior to the time it was taken by Billie Campbell, was $800.

4. That the fair market value of the car at the time it was recovered and returned to plaintiff was $200.

Judgment was rendered that plaintiff recover the sum of $600, and defendant has appealed.

### Opinion.

Defendant's brief contains two propositions upon which it seeks a reversal:

1. That the policy of insurance sued on and pleaded by plaintiff specially excepted any theft accomplished by wrongful conversion, and that plaintiff's petition, alleging that the car was taken from him by "theft by bailee," was insufficient on its face to show any liability on defendant's part; and (2) that the evidence, wholly failing to show any intent on Billie Campbell's part to permanently deprive plaintiff of the value or use of the car, is insufficient to show a "theft by bailee."

Under the "Schedule of Perils" in the original policy the following provision is found:

"Item 2: Theft, Robbery or Pilferage excluding any theft, robbery, or pilferage by any person or persons in the Assured's household, or in the Assured's service or employment whether occurring during the hours of such service or employment or not, and excluding also any wrongful conversion, whether it be by mortgagor or vendee in possession under mortgage, conditional sale or lease agreement, or otherwise, and excluding in any case other than in case of the theft of the entire automobile described herein, the theft, robbery or pilferage of tools, repair equipment, motormeters, fire extinguishers, extra tires and/or tubes, and/or rims, and/or wheels, and/or spot lights, and/or extra ornamental fittings

provided there is a specific premium charge made in writing in Item 2 of the "Schedule of Coverage" on the preceding page and then only to an amount not exceeding the limit therein."

Under the heading of "Conditions, Limitations and Agreements," the following appears:

"F. This policy does not cover (1) Under either section 1 or 2 of the Schedule of Perils, and loss, damage or expense while the automobile insured hereunder is operated, maintained or used (2) beyond the limits of the United States (meaning United States proper and not Alaska, Canal Zone and/or its insular possessions) and Canada, including, however, while between ports within said limits; or (b) for the carrying of explosives not used in connection with the operation of the automobile or for other unusual or extra hazardous purposes; or (c) for any purpose not specified in Statement 7 of the Schedule of Facts; or (d) for rental, hire or livery or for the transportation of passengers for hire, and further, this policy shall not cover if the automobile insured hereunder be used even for one time for rental, hire or livery or for the transportation of passengers for hire."

The following amendments were attached to the policy:

"Assured: Babe Thompson

"Other conditions remaining the same, the above described Policy is amended to read as follows:

"In consideration of the above premium paid, this policy is intended to cover assured against loss while car is driven by any person authorized so to do including owner, employee, chauffeur or any one to whom car is rented."

And, "in consideration of an additional premium of $ *included above* permission is granted for the automobile described in this policy to be rented, leased or used for carrying passengers for compensation while operated and controlled by the assured, or by a person regularly employed by him as chauffeur, but not otherwise, and, in consideration of this permit, it is a condition of this policy that the insurance hereunder shall be reduced at the rate of 2-1/2% of its original amount per month during the entire coverage period of the policy and that in the event of loss or damage, this company shall not be liable beyond the actual cash value of the property at the time thereof nor for any amount greater than the amount of insurance remaining in force hereunder on the date of such loss or damage.

"All other conditions, stipulations, warranties and clauses remaining unchanged."

The first rider or amendment recites that it became effective February 1, 1929, while the last-mentioned bears the same date.

Three riders or amendments were attached to the original printed policy. One providing for damage to the glass in the car, another granting permission to the assured to rent, lease, or use the car for carrying passengers for hire while operated and controlled by the assured or by a person regularly employed by him as chauffeur, and the last providing that the assured should be protected against loss while the car was driven by any person authorized by him so to do, including owner, employee, chauffeur, or any one to whom the car might be rented.

The plate glass indorsement is attached to the original policy and then above that is attached the second one mentioned, and, lastly, the rider providing that the policy shall cover loss to the assured while the car is being driven by any one by him authorized so to do.

It thus appears that the policy as originally printed, was not the contract the parties desired to make, and that it became necessary to attach the riders above mentioned in order that the contract should express the true contract.

There appears to be some doubt as to whether the last-quoted rider or amendment would protect the assured from loss in case the car was stolen by a person to whom he had rented the car and whether this amendment would alter the provisions of the printed policy.

■ In the construction of insurance contracts, the language being selected and used by the insurer to express the terms and conditions upon which it was issued, the policy must be strictly construed against defendant. and liberally in favor of plaintiff. Wood Ins. § 60; Bills v. Ins. Co., 87 Tex. 551, 29 S. W. 1063, 29 L. R. A. 706, 47 Am. St. Rep. 121; Goddard v. Ins. Co., 67 Tex. 71, 1 S. W. 906, 60 Am. Rep. 1; Equitable Life Ins. Co. v. Hazlewood, 75 Tex. 347, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893; Brown v. Palatine Ins. Co., 89 Tex. 590, 35 S. W. 1060.

■ The question before us being doubtful, we conclude against the contention of appellant and overrule the assignment as to the trial court's action on the general demurrer.

Appellant further argues that the evidence is insufficient to show an intent on the part of Billie Campbell to permanently deprive assured of the value or use of the car.

There is evidence that Billie Campbell stated when she took the car that she would be gone about thirty minutes, and the evidence is undisputed that the car was next seen by the assured in an adjoining county thirteen days thereafter, and that, in the meantime, he had sworn to a complaint against her for the theft of the car, and that she was arrested in the other county on said charge.

■ She denies any intent to deprive assured of the value or use of the car, but the

710

jury was not bound to accept her testimony as true, though uncontradicted. Mitchell v. State, 106 Tex. Cr. R. 397, 292 S. W. 545, and cases cited.

The question appears to us to be one of fact for the jury to determine, under all the facts and circumstances surrounding the transaction.

Finding no error in the record, the judgment will be affirmed.